**STATE of Missouri, Respondent,**

v.

**James E. ANTWINE, Appellant.**

**No. 57755.**

Supreme Court of Missouri,
Division No. 2.

Feb. 11, 1974.

Rehearing Denied March 11, 1974.

John C. Danforth, Atty. Gen., Stephen D. Hoyne, Asst. Atty. Gen., Jefferson City, for respondent.

B. William Jacob, The Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant; Paul T. Miller, Executive Director, Willard B. Bunch, Chief Defender, Kansas City, of counsel.

STOCKARD, Commissioner.

Appellant was found guilty by a jury of murder in the first degree and sentenced to life imprisonment. Notice of appeal was filed prior to April 9, 1973, and pursuant to an order of this court as of that date appellate jurisdiction is in this court. We reverse and remand.

The sufficiency of the evidence is not challenged. A jury reasonably could find that on May 8, 1971, while engaged in a robbery, appellant shot and killed Bob Kennedy.

Appellant asserts that prejudicial error resulted from the failure of the trial court to instruct the jury upon the subject of good character. The testimony which appellant claims is sufficient to require such instruction is that of witness James Dewberry given on direct examination as follows:

Q. All right. Now, do you know the reputation of Mr. Antwine as a peaceful, law-abiding citizen?

A. Yes, sir, I do.

Q. What is that reputation?

A. Well, I mean, he seems, I mean to me, I mean to others that have been around in front of us, because he loves sports and stuff. I mean, we generally go out on the weekends, we play football, baseball, and other types of sports.

Q. I'm asking you about his reputation as a peaceful, law-abiding citizen?

A. Yes, he is a peaceful, law-abiding citizen.

MR. SPECK: Objection, Your Honor, nonresponsive.

THE COURT: Objection sustained.

Q. (By Mr. Simon) Do you have an opinion as to his reputation as a peaceful, law-abiding citizen?

A. Yes, sir, I do.

Q. And what is that opinion, sir?

A. Well, it's like this, I mean, he has never caused me any trouble.

MR. SPECK: Objection, Your Honor, nonresponsive.

THE COURT: Objection sustained.

Q. (By Mr. Simon) What is his reputation in the community as a peaceful, law-abiding citizen, is it good or bad?

A. Well, it's good.

On cross-examination the following occurred:

Q. Now, as I understand it, Mr. Dewberry, you finally testified in answer to Mr. Simon's question that your opinion of Mr. Antwine's reputation in the community as a peaceful and law-abiding citizen—his reputation was good, is that correct?

A. Yes.

Q. Would you have the same opinion, Mr. Dewberry, if you knew that Mr. Antwine was arrested on January 1st, 1970 for carrying a concealed weapon?

A. Well, I mean, it would all depend, really. I mean—

Q. I see. Let me ask you this, would you change your opinion if you knew that on May 31st, 1970 Mr. Antwine was arrested for rape?

A. No.

\*   \*   \*   \*   \*   \*

Q. Would your opinion be changed if you had heard that on May 31st, 1970, the defendant was arrested for rape?

A. Would I change my opinion of—

Q. Would your opinion of his reputation for good character in the community be different if you heard that?

A. Well, I would say slightly.

Q. Would your opinion as to his reputation for good character be changed if you had heard that on July 2nd, 1970 he was also arrested for rape?

A. Well, this is how I will put it, I mean, myself, I mean, I know him for—

Q. Excuse me, but the question is about your opinion of his reputation in the community as a man of good character.

A. Well, I can't give you my opinion, I mean, if you won't let me explain.

Q. Okay.

A. I mean if he—

Q. To the jury.

A. Well, I will say it like this: Right now, I mean, for what—from the time that I know him, I mean, and have been with him, I mean, and from the time, I mean, we have—

Q. Excuse me, Mr. Dewberry, for interrupting. The question is about his reputation, not about what you personally know about him.

A. No, I wouldn't change my opinion.

Q. Okay, sir. In fact, you haven't known him all that long, have you?

A. No, sir, I haven't.

■ Rule 26.02(6), V.A.M.R., which follows § 546.070(4) RSMo 1969, V.A.M.S., provides that in all criminal cases the court, whether requested or not, must instruct the jury in writing "which instructions shall include, whenever necessary, the subjects of good character and reasonable doubt; * * *." The term "whenever necessary," as used in the statute and rule, "means that such an instruction is necessary only when there is substantial evidence tending to show the good character of the defendant." State v. Moore, 303 S. W.2d 60, 70 (Mo. banc 1957).

The State contends that there was not substantial evidence tending to show the good character of appellant, and that if there was the opinion expressed by Mr. Dewberry on direct examination was withdrawn on cross-examination.

The testimony of Mr. Dewberry was in some respects vague and indefinite, but brushing aside the equivocal testimony, Mr. Dewberry testified that he had known the appellant about two years; that he had an opinion as to his reputation as a peaceful, law-abiding citizen; that appellant's reputation in the community as a peaceful law-abiding citizen was "good;" and that he would not "change his opinion" if he had known that appellant had been arrested for the offenses mentioned by the prosecuting attorney.

■ In State v. Woods, 428 S.W.2d 521 (Mo.1968), this court quoted from 97 C.J. S. Witnesses § 55 as follows: " 'The witness must qualify to give an opinion by showing such acquaintance with the person, the community in which he has lived, and the circles in which he has moved, as to speak with authority of the terms in which generally he is regarded. Thus, before a witness will be permitted to testify to character, he must first declare that *the* (he) knows the character of the person about whom he is testifying, or adequate knowledge must be shown. *A claim to knowledge is prima facie sufficient,* * * *. Positive certainty is not re-

quired; * * *.' " (Italics added). The questioning of the witness in this case demonstrates that there was a lack of understanding of the permissible testimony concerning good character. The personal views of the witness as to the character of an accused is immaterial and not admissible. Spalitto v. United States, 39 F.2d 782 (8th Cir. 1930); 29 Am.Jur.2d Evidence § 345. For that reason questions should not be asked, and if asked an objection thereto should be sustained, calling for an expression by the witness of his personal views as to the character of an accused. It is only the knowledge of the witness of an accused's reputation in the community that is material, and questions to the witness should be framed to call for answers as to that issue.

■ It might be that upon objection the witness should have been required to show in more detail his qualifications to express an opinion of appellant's reputation in the community as a peaceful and law-abiding person, but no such objection was made, and the testimony that was given, as above set forth, was prima facie sufficient. It is thus apparent that in the absence of an objection, Mr. Dewberry stated a sufficient basis for his testimony as to character. The testimony constituted substantial evidence of the good character of appellant. The equivocal and vague answers of the witness went only to the weight of the testimony, and did not destroy its sufficiency. We note that the prosecuting attorney argued to the court, as a basis for the cross-examination pertaining to arrests, that there was "evidence of good character in the record." We do not agree that on cross-examination Mr. Dewberry withdrew his opinion of appellant's reputation in the community. Equivocal answers were given on cross-examination, but there was also the unequivocal statement that appellant's reputation in the community was good, and as on direct examination, the equivocal statements went only to the weight of the testimony.

The requirements of the statute and rule above cited are mandatory, and no request by appellant for the instruction on good character was required. The trial court erred to the prejudice of appellant in failing to comply with those mandatory provisions. Other points presented by appellant need not be ruled on this appeal.

The judgment is reversed and the cause remanded.

HOUSER, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.