Delores COLE, Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 10906.

Missouri Court of Appeals, Springfield District.

Sept. 29, 1978.

Motion for Rehearing and/or Transfer Denied Oct. 20, 1978.

Application to Transfer Denied Dec. 18, 1978.

Jack N. Bohm, Stoup & Bohm, Kansas City, for movant-appellant.

John Ashcroft, Atty. Gen., Eric Martin, Asst. Atty. Gen., Jefferson City, for respondent.

Before TITUS, P. J., and HOGAN and FLANIGAN, JJ.

FLANIGAN, Judge.

Movant Delores Cole appeals from a denial of her Rule 27.26[1] motion to set aside a judgment and sentence for murder in the second degree. On movant's direct appeal from her conviction this court affirmed the judgment. *State v. Cole*, 547 S.W.2d 494 (Mo.App.1977). After holding an evidentiary hearing on the motion, the trial court, in denying it, made findings of fact and conclusions of law as required by Rule 27.26(i).

Movant's first "point relied on" is that a series of incidents, each taking place after the jury had commenced its deliberations, was "so coercive as to deny movant her constitutional right to trial by jury," and that the trial court erred in finding otherwise. The incidents of which complaint is made involved actions on the part of the trial judge in dealing with the jury. They are: (1) giving MAI–CR 1.10, the "hammer" instruction, (2) eliciting the information that the jury was split 10 to 2, (3) refusing to excuse juror Beard for health reasons, (4) giving a "second informal hammer instruction," and (5) making this statement to the jury: "Gentlemen, the court, in view of a 10 to 2 split, at this time is going to ask you to return tomorrow morning for further deliberations."

Rule 27.26(b)(3) reads: "A proceeding under this Rule ordinarily cannot be used as a substitute for direct appeal involving mere trial errors or as a substitute for a second appeal. Mere trial errors are to be corrected by direct appeal, but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal."

The distinction between "mere trial errors" and "trial errors affecting constitutional rights" is sometimes difficult to make. Both classes of errors may involve the same general field of the law. The magnitude of the error, as distinguished from its type, may be the factor which controls its classification.[2]

Each of the five incidents of which movant complains was mentioned and four were challenged in her motion for new trial. All were abandoned on her original appeal. Unless it may properly be said that the challenged incidents were "trial errors affecting constitutional rights," movant's first point may not be raised in this proceeding. *Covington v. State*, 467 S.W.2d 929, 930[1, 2] (Mo.1971). Whether or not movant is properly entitled to raise her first point in this proceeding, a question which is left unresolved, this court has reviewed the challenged incidents and has concluded that there was no error of either class and that movant's first point has no merit.

Each of the five incidents occurred near the close of the first day of the two-day trial. Having commenced its deliberations at 2:32 p. m., the jury returned to the courtroom, without reaching a verdict, at 5:02 p. m. Incident 1 then took place. The jury retired for further deliberations at 5:08 p. m. and returned to the courtroom at 5:25 p. m. Incidents 2, 3, 4 and 5 then took place. At 5:35 p. m. the court recessed the trial until the following morning. On that day deliberations were resumed at 9:00 a. m. and the verdict was returned at 10:13 a. m.

1. All references to rules are to Missouri Rules of Court, V.A.M.R.

2. "[I]t is a rare trial error that does not have some constitutional basis. Hearsay evidence denies a litigant the right of confrontation; (*State v. Sykes*, Mo.App.1978, 569 S.W.2d 258); confessions almost always have Fifth Amendment implications; physical evidence taken from a defendant normally raises Fourth Amendment considerations; identifications frequently involve due process questions or right to counsel considerations; relevance may raise due process questions; voir dire questioning or failure to excuse a juror can present trial by jury problems; impeachment, enhancement of punishment, or application of the second offender act by prior convictions raise trial by jury, right to counsel, and due process difficulties. The list could go on. I simply do not believe that the last sentence of Rule 27.-26(b)(3) was intended to allow post-conviction relief for every non-objected to bit of evidence admitted which might be claimed to be constitutionally offensive. If that is what the sentence means, it is simply a euphemistic method of granting a second trial and/or second appeal contrary to the first sentence of the subparagraph." *Turley v. State of Missouri*, Mo.App. St.L.Dist., No. 36788, 571 S.W.2d 465 (1978)— concurring opinion of Judge Smith.

■ The giving of MAI–CR 1.10 is discretionary with the trial court. *State v. Carroll*, 562 S.W.2d 772, 773[4] (Mo.App. 1978). Here it was given after the jury had deliberated two hours and thirty minutes without reaching a verdict. The giving of MAI–CR 1.10 has been approved after a jury has deliberated a longer period of time, *State v. Cook*, 512 S.W.2d 907, 910[6] (Mo. App.1974), and a shorter period of time, *State v. Doepke*, 536 S.W.2d 950, 951[6] (Mo.App.1976).

The jury foreman informed the court that four or five ballots had been taken, that some changes had occurred in the balloting, and that the last two ballots were the same. The following then occurred:

"THE COURT: Do you believe that further discussions at this point would assist you?

MR. JOHNSTON: You mean from—

THE COURT: Those among yourselves?

MR. JOHNSTON: No, sir."

■ Thereupon the court gave MAI–CR 1.10. The verdict was not returned until the following day and after additional deliberations, in two steps, of one hour and thirty minutes. Under these circumstances the record does not demonstrate an abuse of discretion on the part of the trial court in the giving of MAI–CR 1.10. *State v. Letourneau*, 515 S.W.2d 838, 844[9] (Mo.App. 1974) and authorities there cited.

■ It was not "coercive per se" for the trial judge to elicit the information that the jury was split 10 to 2. *State v. Talbert*, 454 S.W.2d 1, 4[7] (Mo.1970); *State v. Smith*, 431 S.W.2d 74, 86[31] (Mo.1968). Unlike the situation in *State v. Sanders*, 552 S.W.2d 39 (Mo.App.1977), upon which movant principally relies, the trial court here elicited only the numerical aspect of the split and did not know the issue on which the jury was split nor how the majority stood.

■ When the jury returned to the courtroom at 5:25 p. m. the court told juror Beard that the court had been advised that Beard "may have a health problem." A colloquy between the court and Beard ensued. At the outset Beard told the court, "I would rather request to get out on account I don't feel good." The court said, "Well, I can't release you at this point." Movant challenges the propriety of the latter remark. A reasonable construction of the statement, however, in context with the rest of the colloquy is that the court meant that he was going to ask Beard several questions before reaching a decision on the matter of excusing him.

■ Although the specific nature of Beard's illness, if such it was, is not disclosed by the record, Beard told the court that he felt his health would be endangered "by further deliberation at this time." That statement doubtless figured in the court's decision to grant a recess until the following day. The court inquired of Beard whether or not his health "would permit further deliberations tomorrow morning"; Beard replied that he did not know. The court expressed solicitude for Beard's condition and stated he would not allow the proceeding to have any ill effect upon Beard's health. It was in conjunction with that statement that the court made the remark which movant labels "a second hammer instruction." The remark was, "It is always advantageous to give a verdict in a given case." Viewing the latter remark in its context, this court finds, as did the trial court, that it does not possess the quality of coerciveness which movant attributes to it.

Further questioning by the court with regard to Beard's ability to deliberate the following morning elicited this response from Beard: "I wouldn't say about that because it depends on how I get to feeling."

In recessing the trial until the following day the court said to the jury: "Gentlemen, the court, in view of the 10 to 2 split, at this time is going to ask you to return tomorrow morning for further deliberations." The foreman had previously informed the court that the jury was so split.

■ The trial court did not abuse its discretion in refraining from excusing juror Beard immediately upon receiving his request and in questioning Beard concerning

his ability to resume deliberations on the following day. There is nothing in the record to show that Beard's indisposition, whatever it was, was one of an emergency nature. Beard's request to be excused was short of being an insistent one, and Beard himself agreed with the trial court that his ability to resume deliberations the following day could better be gauged when that day came. The record of the proceedings on the second day makes no reference to Beard or his condition. During and following the colloquy between the court and Beard, counsel for movant made no objection to the incident and requested no relief of any nature.

Although this court has access to the conversation between Beard and the trial court, the latter had the opportunity to observe Beard's condition and the degree of fervor of his complaints. Clearly the trial court was in a superior position to evaluate the situation and determine the necessity for excusing Beard. The record does not demonstrate that the trial court abused its discretion in the handling of the Beard incident. In this proceeding the trial court found that such handling was "not coercive." This court holds the finding to be not "clearly erroneous." Rule 27.26(j).

■ The trial court found that, viewed in context, the passing reference to the 10 to 2 split, made by the court in recessing the trial, was not tantamount to coercion. This court agrees with that finding and holds that it was not "clearly erroneous." Rule 27.26(j).

Movant's second "point relied on" is that movant was deprived of effective assistance of counsel at the murder trial in that her trial attorneys, Claude T. Wood and Dale H. Close, were derelict in six particulars. Four of the charges of dereliction pertain to counsel's conduct in the trial court and two pertain to counsel's conduct in this court.

Counsel's alleged derelictions in the trial court are set forth in these sub-points:

1. Failure to make an adequate investigation.

2. Failure to adduce evidence of movant's good character.

3. Failure to "offer to the trial court a plain statement of the reasons for the admissibility" of certain evidence because of counsel's "lack of preparation or unfamiliarity with the rules of evidence."

4. Failure to cross-examine the state's witnesses concerning certain conditions existing in the tavern at the time of the offense.

"The burden of proof to establish the charge of ineffective assistance of counsel is on the movant. This burden is not met unless it is clearly demonstrated that the acts of counsel went beyond errors of judgment or trial strategy and were of such character as to result in a substantial deprivation of movant's right to a fair trial." *Myrick v. State*, 507 S.W.2d 42, 44[2] (Mo. App.1974). The burden upon movant to show ineffective assistance of counsel is a "heavy" one. *Stevens v. State*, 560 S.W.2d 599, 600[3] (Mo.App.1978); *Pickens v. State*, 549 S.W.2d 910, 912[2] (Mo.App.1977) ("particularly heavy"); *Lahmann v. State*, 509 S.W.2d 791, 794[7] (Mo.App.1974).

■ A movant who bases his claim of ineffective assistance of counsel upon the ground of inadequate investigation has the burden of showing that a fuller investigation would have uncovered evidence which would have improved his trial position and that he was deprived of substantial evidence by counsel's neglect. *Bibee v. State*, 542 S.W.2d 540, 541[1] (Mo.App.1976).

Movant makes no claim that her trial attorneys failed to make any investigation.[3] In support of her assertion that her attorneys failed to make an adequate investigation movant charges that counsel failed to discover Delbert Moore, Bennie Coleman

---

**3.** Movant introduced into evidence the file of attorneys Wood and Close. The trial court made a finding that the file "reveals notations of over 40 names on various work sheets which appear to have been used in trial preparation,

as well as some notations as to knowledge or lack of knowledge various ones had about the case." Movant called attorney Close who testified that he interviewed witnesses. Movant did not call attorney Wood.

and Bill McCabe and to present their testimony at trial. Movant did not call Moore, Coleman or McCabe to testify at the motion hearing.

The crime was committed in a tavern and approximately 90 persons were present when the shooting took place. Movant's brief concedes that McCabe had no personal knowledge of the significant events and that his testimony would have been hearsay. The fact is that McCabe did testify at the original trial (as to other matters) as a defense witness.

In support of her complaint concerning the non-production of Moore and Coleman at the original trial, movant relies solely upon the contents of their affidavits contained in the transcript of the original trial. The affidavits themselves were hearsay and movant made no attempt to introduce them into evidence at the motion hearing. If they had been received into evidence the trial court was not required to lend credence to their contents. Even if it be assumed, arguendo, that movant is entitled to the benefit of the contents of the affidavits, her contention fails.

Moore and Coleman stated, in their respective affidavits, that they left the tavern "hurriedly," "immediately after the shooting." The record is devoid of any proof that a reasonable investigation on the part of counsel would have disclosed that either Moore or Coleman was among the 90 people present in the tavern or that either of them had any information of significant value[4] to movant's defense.

■ The efforts of the trial attorneys to obtain a new trial on the basis of the Moore and Coleman affidavits demonstrate that counsel regarded their testimony as helpful and made every effort to utilize it once it came to light. The trial court found that

both Mr. Wood and Mr. Close interviewed "various potential witnesses prior to the trial." The trial court also found that movant failed to show that "a fuller investigation by counsel prior to the trial"[5] would have disclosed Coleman or Moore. These findings are not "clearly erroneous." Movant's sub-point 1 has no merit.

In support of sub-point 2 movant introduced at the motion hearing the testimony of four people, each of whom expressed his personal view as to movant's character. Movant charges that her trial attorneys were derelict in "not putting on such evidence." The flaw in movant's position is that the testimony adduced at the motion hearing would not have been admissible at the trial.

In *State v. Antwine*, 506 S.W.2d 397, 399[2] (Mo.1974) our supreme court discussed the admissibility of testimony concerning the accused's good character. It pointed out that the personal opinion of a witness as to the character of an accused "is immaterial and is not admissible." The court further stated, "It is only the knowledge of the witness of an accused's reputation in the community that is material." It is testimony of the latter type which an accused may properly present. The testimony adduced by the movant at the motion hearing was of the inadmissible "personal opinion" variety.

■ Movant made no showing that there was character evidence available which would have been admissible under the rule in *Antwine*. Moreover, attorney Close, testifying for movant at the motion hearing, said, "I did not believe that evidence of [movant's] good character would be particularly useful." The trial court found that the decision not to "inject the character of movant" was a matter of trial

---

4. See *State v. Cole*, 547 S.W.2d 494, 497 (Mo. App.1977), the original appeal, where the affidavits of Moore and Coleman are summarized. The affidavits were ruled inadequate to warrant a new trial on the basis of "newly discovered evidence." This court stated that Moore's testimony amounted only to impeachment. "We cannot say that [Coleman's] testimony

would probably produce a different result on new trial."

5. "There is no clear rule on what constitutes sufficient case investigation; all that is required is investigation that is adequate under the circumstances of each particular case." *Pickens v. State*, 549 S.W.2d 910, 912[5] (Mo. App.1977).

strategy. That finding is not "clearly erroneous." Sub-point 2 has no merit.

In support of sub-point 3 movant in effect is arguing that evidence *which was offered by her trial counsel but excluded by the court* should have been received into evidence. Movant claims that counsel should have been more persuasive in his attempt to induce a favorable ruling. This is an *ingenious* attempt to circumvent that provision of Rule 27.26(b)(3) which provides that mere trial errors are to be corrected by direct appeal.

█ The error, if any, was that of the trial court in not receiving the offered evidence. There was no dereliction on the part of counsel who made the offer. Counsel obviously felt the evidence was admissible for they offered it and they were not derelict in failing to anticipate an erroneous ruling.

The responsibility of trial counsel is a heavy and sobering one, especially in a trial of this sort. That responsibility is not to be enhanced by blaming trial counsel for the human failings which all judges, trial and appellate, are heir to.

█ The specific evidence offered by trial counsel and rejected by the trial court has been reviewed, gratuitously, and this court finds that movant was not deprived of a fair trial by reason of its exclusion. Sub-point 3 has no merit.

█ By her sub-point 4 movant charges trial counsel with ineffectiveness consisting of inadequately cross-examining state's witnesses. This court has reviewed the transcript of the murder trial. The state presented nine witnesses. Each was cross-examined by defense counsel. The topics which movant claims should have been stressed on cross-examination were in fact explored. The extent of cross-examination is almost always a matter of trial strategy. The attorneys who represented movant at the murder trial did an excellent job of cross-examining and they are not to be faulted because movant's instant (and able) counsel might have employed a different technique. *Coles v. State*, 495 S.W.2d

685, 687[6] (Mo.App.1973). Sub-point 4 has no merit.

Counsel's alleged derelictions in this court are set forth in these sub-points:

(5) Failure to press on appeal the "issue of jury coercion" and the issue of the correctness of the trial court's exclusion of the evidence mentioned in movant's sub-point 3;

(6) Failure to "communicate to the court of appeals the true state of the record."

█ These claims of counsel's inadequacy on appeal are matters for determination by this court rather than the trial court. *Hemphill v. State*, 566 S.W.2d 200, 208[15, 16] (Mo. banc 1978). In compliance with the *Hemphill* procedure movant filed in this court a motion to recall the mandate issued in the original appeal, to vacate the sentence of affirmance and to redocket the original appeal for rehearing. This court accorded movant a hearing upon the complaints contained in subpoints 5 and 6. This court has concluded that neither sub-point has merit.

With respect to sub-point 5 this court, in the opening portion of the instant opinion, has dealt with the "issue of jury coercion." This court finds that if the coercion issue had been presented on the original appeal, a reversal would not have been effected. Movant has received a review of the coercion issue. Although the standards of review in a Rule 27.26 appeal differ from those governing an original appeal, this court's review of the facts underlying the alleged coercion has led it to the conclusion that counsel was not ineffective in concluding not to advance the point on the original appeal.

With regard to the evidence which the trial court excluded, it would serve no useful purpose to discuss it extensively. The state has conceded, and this court agrees, that the trial court erred in excluding it. However, the excluded evidence merely tended to show possible bias on the part of one of the state's witnesses. The impeachment was on a matter totally collateral to what the witness observed in the tavern.

**404**

This court has concluded that if the point had been presented on the original appeal it would not have effected a reversal and that trial counsel was not ineffective in failing to include the point on the original appeal.

Movant's sub-point 6 is directed to a sentence contained in the opinion of this court which disposed of the original appeal. It is movant's position that the sentence contained facts which were unsupported by the record. This court finds that the sentence was supported by the record or at least by inferences reasonably to be derived from it. More significantly, however, there was nothing in the appellate brief of movant's trial counsel which induced this court's alleged misinterpretation of the evidence. Surely counsel is not to be faulted for failing to anticipate a specific slip of the appellate pen. There was no slip and, if such there was, it was not due to ineffective appellate advocacy.

The judgment is affirmed.

All concur.