**STATE of Missouri, Respondent,**

v.

**Malcolm WESTON, Appellant.**

**Malcolm WESTON, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. WD 49726, WD 51656.**

Missouri Court of Appeals,
Western District.

July 30, 1996.

Ellen H. Flottman, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Kurt U. Schaefer, Asst. Atty. Gen., Jefferson City, for respondent.

Before LAURA DENVIR STITH, P.J., and ULRICH and SMART, JJ.

SMART, Judge.

Malcolm Weston appeals from his convictions of murder in the second degree, in violation of § 565.021.1, RSMo 1986, and of armed criminal action, in violation of § 571.015, RSMo 1986. Weston was sentenced to life imprisonment plus a consecutive term of ten years. Weston also appeals from the denial of his Rule 29.15 motion without an evidentiary hearing.

On November 9, 1993, Russell "Rusty" Allen and his wife, Lisa Allen, were driving home in their car between 8:00 p.m. and 8:30 p.m. Lisa was driving and Rusty was in the passenger's seat. As they approached the intersection of 18th Street and Messanie in St. Joseph, Missouri, Ms. Allen stopped the car because the car in front of her had stopped. Mr. Allen rolled down the passenger side window to discard his cigarette. While stopped at the intersection, three men approached the couples' car on the passenger side. Mr. Allen began talking to one of the men, later identified as Malcolm Weston. Mrs. Allen heard Weston yell at her husband, using profanity, to give him "the . . . money." Mrs. Allen noticed that Weston had a gun in his hand and she heard a "pop." Then she saw Weston walk away from the car. Mr. Allen stated to his wife, "Oh, my God. I think I've been shot." Mrs. Allen replied, "no you haven't." After realizing that her husband had been shot, she drove around the car that was stopped in front of her to a nearby convenience store, where she was able to summon help. Rusty died short-

ly thereafter from a gunshot wound to his lower right chest.

Just before the incident, Melody Wilson was standing outside of a bar talking to a friend near the intersection. She saw the three men approach the car. She heard the sound of the gun and looked over towards the car where she saw a man, whom she later identified as Weston, walk away briskly from the car with what appeared to be a gun in one hand and money in the other hand. Wilson did not notify police that she had witnessed the incident until several hours later when she returned home. The police took her statement and she identified Weston as the man she saw from a photographic lineup. Weston was found guilty after a jury trial on both charges. He was sentenced to life in prison plus ten years. Weston filed a *pro se* Rule 29.15 motion on February 10, 1995, and an amended motion on May 19, 1995. The motion court denied the Rule 29.15 motion without an evidentiary hearing. Weston appeals from the convictions and the denial of postconviction relief.

### Testimony of Melody Wilson

In Point I, Weston asserts that the trial court plainly erred in permitting Melody Wilson to present testimony which constituted inadmissible hearsay. Weston claims that the admission of this testimony violated his right to confront and cross-examine witnesses against him, his right to a fair trial, and his right to due process as guaranteed by the fifth, sixth and fourteenth amendments to the United States Constitution and Article I, §§ 10 and 18(a) of the Missouri Constitution. Weston claims that Wilson's testimony was inadmissible hearsay that operated to cause a manifest injustice to Weston, since Wilson's identification of him was the only evidence linking Weston to the murder.

■ Weston claims that Melody Wilson testified "that she later [after the incident] found out that appellant had done the shooting." Reviewing the two transcript references cited by Weston, we find that Wilson testified as follows:

Q. Did you know the larger man who approached the passenger side of the vehicle?

A. At that time, no. I mean, you know, I didn't—I hadn't—no.

\* \* \* \* \* \*

Q. You have told us that you didn't know the person at that time who did the shooting by name?

A. But I knew some of his people and some of his friends, you know.

Q. Did you come to find that out after you came forward?

A. Yes.

Weston did not object to Wilson's testimony. This error was not presented to the trial court in Weston's motion for new trial. Failure to timely object to the admissibility of evidence waives any right to challenge the admissibility of the evidence on appeal. *State v. Griffin,* 662 S.W.2d 854, 859 (Mo. banc 1983). Since this point was not properly preserved for appellate review, Weston is entitled only to ask for plain error review. *State v. Sidebottom,* 753 S.W.2d 915, 920 (Mo. banc), *cert. denied,* 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988). Generally, where hearsay is not objected to at trial, the admission of the hearsay evidence is not plain error. *State v. Newson,* 898 S.W.2d 710, 715 (Mo.App.1995).

■ Melody Wilson identified Weston by photo line-up after giving her statement to police. She also identified Weston at trial. We cannot agree that the above testimony shows what Weston suggests, i.e., "that [Wilson] later found out that appellant had done the shooting," and it is not clear that Wilson's testimony constituted hearsay. At most, Wilson's testimony suggests that Wilson later found out Weston's name, but even this is not clear from the interchange between Wilson and the prosecutor. Even if Wilson's testimony were hearsay, we discern no manifest injustice nor miscarriage of justice from the admission of the testimony. Rule 30.20. Wilson identified Weston immediately after the incident from a photo line-up based upon his appearance. When she learned his name is immaterial. The trial

court had no duty to intervene in any way. Point I is denied.

## Postconviction Relief

In Point II, Weston claims that the motion court erred in denying his Rule 29.15 motion without an evidentiary hearing. Weston claims that his Rule 29.15 motion pleaded facts which, if proven, would warrant relief and which were not refuted by the record. Weston asserts that he was denied his right to effective assistance of counsel as guaranteed by the sixth and fourteenth amendments to the United States Constitution and by Article I, § 18(a) of the Missouri Constitution. Specifically, Weston claims that trial counsel was ineffective for failing to introduce any medical evidence regarding Melody Wilson's poor eyesight or to impeach her with the fact of her poor eyesight.

Appellate review of the denial of a Rule 29.15 motion is confined to the issue of whether the findings of fact and conclusions of law of the motion court are clearly erroneous. *State v. Parker,* 886 S.W.2d 908, 933 (Mo. banc 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995). The motion court's determination is clearly erroneous only if, after reviewing the entire record, the appellate court has a definite and firm impression that a mistake has been made. *State v. Nolan,* 872 S.W.2d 99, 104 (Mo. banc 1994).

To establish ineffective assistance of counsel, defendant must satisfy the *Strickland* two-prong test, showing (1) counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under substantially similar circumstances, and (2) that defendant was thereby prejudiced. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Review begins with the presumption that counsel is competent and movant has the "heavy burden" of proving counsel's ineffectiveness by a preponderance of the evidence. *Amrine v. State,* 785 S.W.2d 531, 534 (Mo. banc), *cert. denied,* 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 181 (1990). Finally, in order to show prejudice, appellant must show that a different outcome would have resulted but for counsel's errors.

*Sanders v. State,* 738 S.W.2d 856, 860–61 (Mo. banc 1987).

Ineffective assistance of counsel claims relating to "trial strategy" generally do not provide a basis for post-conviction relief. *State v. Johnson,* 901 S.W.2d 60, 63 (Mo. banc 1995). Counsel must be allowed wide latitude in defending the client and may use his or her best judgment in matters regarding trial strategy. *State v. Davis,* 814 S.W.2d 593, 603 (Mo. banc 1991), *cert. denied,* 502 U.S. 1047, 112 S.Ct. 911, 116 L.Ed.2d 812 (1992). Courts reviewing such claims should keep in mind that courts have the benefit of hindsight, and should not be hypercritical when reviewing counsel's conduct at trial. *State v. Heslop,* 842 S.W.2d 72, 77 (Mo. banc 1992), *cert. denied,* 508 U.S. 921, 113 S.Ct. 2369, 124 L.Ed.2d 275 (1993).

Movant is entitled to an evidentiary hearing if in his motion (1) he pleads facts, not conclusions, which, if true, would warrant relief; (2) the facts are not refuted by the record; and (3) the matters complained of prejudiced movant. *Johnson,* 901 S.W.2d at 63. A hearing is not required if the motion, files and records of the case conclusively show that movant was not entitled to relief. *Parker,* 886 S.W.2d at 932.

In Weston's *pro se* Rule 29.15 motion, he stated:

Movant's trial counsel was ineffective for failing to investigate and reasonably prepare movant's case; More specifically, counsel was derelict in the following duties owed to movant:

1) Failure to investigate the fact that the state's witness, Melody Wilson, was and is legally blind: even after movant repeatedly insisted of counsel to do so;

\*  \*  \*  \*  \*  \*

3) Failure to present the expert testimony of an optometrist [as] an expert witness;

4) Failure to impeach the state's witness Melody Wilson. . . .

In his amended Rule 29.15 motion, Weston claimed:

Counsel failed to adequately cross-examine and impeach State witness, Melody Wilson's identification of movant as the individual seen standing at the passenger side of Russell Allen's car minutes before the shooting and later seen leaving the scene.

Specifically, counsel failed to cross-examine and impeach Ms. Wilson on her *inability to clearly observe events on the night of the alleged offense* on account of her poor eyesight. Movant was prejudiced by counsel's failure to adequately cross-examine and impeach the State's key witness, Melody Wilson, in that movant's mistaken identification defense rested on Ms. Wilson's credibility.

(Emphasis added). After considering movant's Rule 29.15 motion, the motion court stated:

"The extent of cross-examination is almost always a matter of trial strategy." *Cole v. State,* 573 S.W.2d 397, 403 (Mo.App.1978). Movant's trial counsel did extensively cross examine Melody Wilson regarding her ability to observe and identify movant as well as questions (sic) pertaining to inconsistent statements previously made by her. The court cannot find how a different cross-examination would have changed the outcome of the trial.

Weston's attorney did cross-examine Melody Wilson as to her observations. There was no indication from her testimony that she had any problem with her eyesight. The *pro se* motion states that Ms. Wilson was "legally blind," and that counsel failed to pursue the investigation as to Ms. Wilson's eyesight "even after movant repeatedly insisted of counsel to do so." The motion implies that Weston informed his attorney of information that Ms. Wilson suffered from poor eyesight, and requested that the attorney investigate, and that counsel refused to pursue the matter. The amended motion does not allege that Weston gave his counsel information as to the "legal blindness" of Ms. Wilson. Nor does it allege failure to investigate. Rather, it states only that counsel failed to cross-examine and impeach Ms. Wilson on "her inability to clearly observe" the events "on account of her poor eyesight." Movant did not, in the amended motion, plead facts which, if true, would warrant relief. However, since the amended motion explicitly incorporated the *pro se* motion, the matters pleaded in Weston's *pro se* motion, along with those pleaded in the amended motion, are properly before this court for review. *State v. McCarter,* 820 S.W.2d 587, 589 (Mo.App. 1991). The record does not conclusively refute the allegations made by Weston. The *pro se* motion states that Ms. Wilson was legally blind, and that Weston asked his counsel to investigate, and that counsel failed to do so. Because this was an eyewitness identification case based entirely on Ms. Wilson's identification, the significance of these allegations is evident. Although a review of counsel's cross-examination of Ms. Wilson gives no indication of any failure on the part of counsel, and though it may be extremely unlikely that counsel would fail to .develop a challenge to Ms. Wilson's eyesight if he had been informed she was "legally blind," nevertheless the record does not directly address the specific allegations of the original *pro se* motion. The allegations made by Weston, if true, may entitle him to relief. Therefore, the judgment of the trial court denying the post-conviction motion is vacated, and the case will be remanded for an evidentiary hearing.

### Conclusion

The judgment of conviction is affirmed. The judgment denying the Rule 29.15 post-conviction motion without a hearing is vacated, and the post-conviction case is remanded to the trial court for an evidentiary hearing on the allegation in Weston's Rule 29.15 motion that Ms. Wilson was legally blind, and that counsel refused to investigate facts related to Ms. Wilson's alleged poor eyesight, and failed to cross-examine her as to her poor eyesight, although the defendant repeatedly asked him to do so.

All concur.