Woodrow ANDERSON,
Movant–Appellant,

v.

STATE of Missouri, Respondent–
Respondent.

No. 24513.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 4, 2002.

Mark A. Grothoff, Asst. Public Defender, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Dora A. Fichter, Assistant Attorney General, for Respondent.

JAMES K. PREWITT, Presiding Judge.

Woodrow Anderson (Movant) was charged with and convicted by a jury of robbery in the first degree and armed criminal action, for which he was sentenced to two concurrent terms of twenty years' imprisonment. The convictions and

sentences were affirmed by this Court on direct appeal. *State v. Anderson*, 953 S.W.2d 646 (Mo.App.1997).

On November 27, 2000, Movant filed a timely *pro se* motion for post-conviction relief. Thereafter, counsel was appointed and an amended Rule 29.15 motion was filed March 5, 2001. An evidentiary hearing was held on June 7, 2001. The motion court filed its findings, conclusions and judgment on August 16, 2001, denying Movant's motion for post-conviction relief. Movant appeals, presenting two points relied on.

■■■ Under Rule 29.15(k), this Court's review of the denial of a post-conviction motion is limited to a determination of whether the findings, conclusions and judgment of the motion court are clearly erroneous. *Smith v. State*, 28 S.W.3d 889, 890 (Mo.App.2000). The findings and conclusions of the motion court are deemed clearly erroneous only if a review of the entire record leaves this Court with a definite and firm conviction that a mistake has been made. *Barnum v. State*, 52 S.W.3d 604, 607 (Mo.App.2001).

In his first point, Movant contends the motion court erred in denying post-conviction relief because Movant was denied effective assistance of counsel in that counsel failed "to impeach Deputy Clifton H. 'Butch' Cossey with evidence of a conversation between Deputy Cossey and Walter Lee, [Movant's] cellmate[,]" as such impeachment would have cast doubt on the deputy's credibility. Movant asserts that "there is a reasonable probability that the jury would not have found Deputy Cossey credible and would have acquitted [Movant]."

■■ To prevail on a claim of ineffective assistance of counsel, a movant must show that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances and that movant was prejudiced thereby. *State v. Weston*, 926 S.W.2d 920, 923 (Mo.App.1996). Movant's claim is reviewed with the presumption that counsel's assistance was competent. *Id.* Movant bears a heavy burden of overcoming the presumption by a preponderance of the evidence. *Id.* To show prejudice, a movant must show that a different outcome would have resulted but for counsel's errors. *Id.*

There was testimony, which Movant contends was "[t]he most incriminating evidence at [Movant's] trial," elicited from Deputy Clifton H. Cossey and quoted below. Deputy Cossey was a part-time jailer whose grandson was a victim of the robbery that Movant and an accomplice were accused of committing.[1]

A. [By Deputy Cossey] [W]hen I ... took him [Movant] back, I told him that that was my grandson that they had robbed the night before and I appreciated them not hurting him.

Q. [By prosecutor] And how did he respond?

A. He stopped and raised his hands. He said, "Hey man, I told Harry I was in it for the money, but I wasn't in it to hurt anyone, not anybody."

Movant's first point refers to a statement obtained by an investigator with the Public Defender's Office wherein Movant's

---

1. Trial counsel filed a pre-trial "Motion to Suppress Statements" in which he moved "to suppress any evidence concerning any oral or written statements allegedly made by defendant to Officer Clifton Cossey" on the ground that Movant had "invoked his right to counsel, but [Cossey] continued to interrogate [Movant] in spite of his request for counsel." The trial court denied the motion. The same contention was briefed as a point relied on in Movant's direct appeal.

cellmate alleged that he was asked by Deputy Cossey to "try to talk to [Movant] and get him to tell you he did it. Because that was [my] grandson. Because we need to get solid information on him or they might walk free." Movant contends that the statement made by the cellmate was available to counsel and should have been used to discredit Deputy Cossey's following testimony:

Q. [By trial counsel] When did you inform the prosecuting attorney of this [admission by Movant]?

A. [By Cossey] Well, it wasn't until their, I guess you would call it, arraignment. I was in with my grandson. I sat in the courtroom with my grandson, and they seemed to exclude [Movant's accomplice], you know. And I said, "Well, I had talked to Woodrow—Mr. Anderson—and he implicated Mr. Hightower [Movant's accomplice]." And that's when I thought I better talk to the prosecuting attorney about it.

Q. According to the report of your statement, that has a date on of March 11 of 1996. Is that when you let this be known to the prosecutor that that remark had been made?

A. I couldn't swear to that. I think it was prior to that, that I—The first time that I had mentioned it to her, I'm sure she had stuff on her mind. I don't [think?] she understood me at that time.

. . . .

Q. Do you consider what he said to be—what you claim [Movant] said to be self-incriminating?

A. Yes, I would.

Q. Do you consider it an admission?

A. Yes, I would.

Q. You waited—And yet, you waited five months to—

A. They had them in jail, sir. They had them in jail, and I figured they had the goods on them, you know. I didn't figure my—what he told me made any difference. I figured they were found already pretty well guilty, you know.

. . . .

Q. About how long were you a police officer?

. . . .

A. That was about four years, . . .

Q. Four years. And in that time, no one told you that you should report an admission as soon as possible?

. . . .

THE WITNESS: Yes. I—I know to report any admission like that. But like I say, I come in at odd times and fill in when just when I'm needed. And they were in jail, you know, and I understood that it was pretty well and open and shut case. You know, I figured that everybody knew that I knew.

BY [TRIAL COUNSEL]:

Q. Was there anyone there when he said that—when he said that to you?

A. No, no. Just—

Q. Well, how would everyone have—Did you—I don't understand.

A. Well, they had to have a reason for having him in jail. I figured, you know, that they had caught them with enough evidence that they might not need my testimony.

Q. Okay. What made you decide five months later that they did need your testimony?

A. Like I said, when I was in the courtroom here and they didn't seem to have [Movant's accomplice] implicated, that I knew—you know, I knew he was from what [Movant] had told me.

[TRIAL COUNSEL]: No further questions.

■ Movant contends that this testimony, to the effect that Cossey "did not

immediately report [Movant's] alleged admission because he believed that 'they were found already pretty well guilty[,]' that he 'understood that it was pretty well an open and shut case[,]' and 'that they had caught them with enough evidence that they might not need [Cossey's] testimony[,]' " could have been impeached by the statement given by Movant's cellmate to cast doubt on Deputy's Cossey's credibility. However, Movant has the burden of establishing that the impeachment would have offered a defense to the charged crimes. *Garrison v. State,* 992 S.W.2d 898, 902 (Mo.App.1999). The testimony which Movant claims counsel failed to present would not have provided Movant with a defense, but merely impeached a witness for the State. *See Lane v. State,* 778 S.W.2d 769, 771 (Mo.App.1989).

A further reading of the transcript may provide a different interpretation than that proposed by Movant regarding his claim that Cossey "did not immediately report [Movant's] alleged admission." The following testimony, on redirect examination by the prosecutor, suggests that Cossey did not wait as long as Movant stated in reporting Movant's admission:

Q. [By prosecutor] Mr. Cossey, if I can understand you correctly, I believe you're saying that [you] mentioned it to me, or someone, long before you made the statement; is that correct?

A. Yes, ma'am. Yes.

Q. Okay. Did anyone ask you to make a written statement at the time when you first mentioned it?

A. No. No.

Q. When did you make the written statement? I believe it's dated March 11. Would that be a fair statement?

A. Yes.

Q. And did someone ask you to make that written statement, then?

A. Yes.

Q. Who asked you to do that?

A. Well, I thought you did. You did.

■ Further, "[i]f a defense attorney has no notice that a witness exists, he cannot be held ineffective for failing to call that witness to testify." *Lane,* 778 S.W.2d at 771. Movant's trial counsel testified at the post-conviction hearing and stated that had he been aware of the statement he would have used it to rebut the deputy's testimony, but he could not recall a report pertaining to such an interview and could not remember Movant mentioning the same to him. Witness credibility is a determination exclusively for the motion court, which is free to believe or disbelieve any evidence, whether contradicted or undisputed. *Id.*

■ Movant must also demonstrate by a preponderance of the evidence that there is a reasonable probability that impeachment of Deputy Cossey would have changed the outcome of the trial. *Barnum,* 52 S.W.3d at 608. *See also Jeremiah v. State,* 73 S.W.3d 857, 858 (Mo.App. 2002). Movant's speculation that Cossey's testimony was "[t]he most incriminating evidence at appellant's trial" can also be challenged, as there was other incriminating evidence presented from which a jury could have found Movant guilty.

Movant had been stopped close to the scene of the robbery after failing to stop at a stop sign approximately twenty minutes after officers were notified that a bank deposit had been stolen from two employees of Town & Country Supermarket. Movant's passenger was identified as the person who had committed the robbery and had stolen one of the victims' truck, later found about three-quarters of a mile from the scene. As officers approached, Movant exited his car and proceeded to walk away. He kept walking when he was

ordered to stop. Movant's passenger ran from the car and was apprehended a block away. Both Movant and his passenger had hidden in their clothing large amounts of cash, and that which Movant had hidden was bundled the same as the cash stolen from the bank deposit bag. Movant had a total of $1,933 on his person, and his passenger had a total of $1,924. The amount of cash reported stolen was between $3,500 to $3,800. Movant's first point is denied.

■ Movant's second point charges error in the motion court's failure to make specific findings and conclusions on issues raised in Movant's amended post-conviction motion. Although the motion court is not required to issue itemized findings and conclusions, its findings and conclusions must be sufficient to permit meaningful appellate review. *Boxx v. State,* 857 S.W.2d 425, 429 (Mo.App.1993). The motion court's failure to follow this requirement may constitute reversible error. *White v. State,* 939 S.W.2d 887, 903 (Mo. banc 1997).

Certain exceptions to reversal and remand for deficient findings and conclusions are set forth in *Crews v. State,* 7 S.W.3d 563, 568 (Mo.App.1999):(1) no conclusion of law is required where "an isolated issue [is] overlooked by the motion court [and] it is clear that movant is entitled to no relief as a matter of law and will be denied no prejudice by being denied a remand"; (2) no findings and conclusions are required where "the motion court grants a hearing on the motion and the movant fails to present substantial evidence at the hearing to support that allegation"; (3) findings and conclusions are not required where there are issues not properly raised or not cognizable in a post-conviction motion; (4) reversal is not required where the post-conviction motion was in itself insufficient and ineffective; and (5) no findings are required where the only issue is one of

law. Another exception is where "the correctness of the motion court's action is clear from the record." *See Gilliland v. State,* 882 S.W.2d 322, 326 (Mo.App.1994).

Here, the State concedes that Movant's claims in paragraphs 8(c), 8(d), 8(f), 8(g), 8(j), 8(k), and 8(*l* ) of Movant's amended post-conviction motion require remand for further findings and conclusions by the motion court. However, the State contends that Movant's claims presented in paragraphs 8(b), 8(e), 8(h) and 8(i) do not require findings and conclusions for the reasons set forth below.

■ Movant's claim in 8(b), that "the trial court plainly erred in sentencing movant because his sentences were illegal and without jurisdiction[,]" fails as a matter of law. The imposition of cumulative punishment for robbery in the first degree and armed criminal action does not violate the double jeopardy clause, although both statutes proscribe the same conduct, as our legislature has specifically authorized cumulative punishment under the two statutes. *Missouri v. Hunter,* 459 U.S. 359, 368–69, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

■ Contentions in paragraphs 8(e), that "[t]he trial court plainly erred in submitting Instruction No. 12, the verdict director for armed criminal action, which was not supported by the evidence[,]" and 8(h), that "[t]he trial court erred in submitting Instruction No. 8, concerning responsibility for the conduct of another[,]" raise claims of instructional error and are not cognizable in post-convictions proceedings and therefore do not require specific findings. *Richardson v. State,* 773 S.W.2d 858, 860–61 (Mo.App.1989).

■ The State also asserts that Movant's claim in paragraph 8(i), that "[t]he trial court erred in denying movant's motion for judgment of acquittal because the

evidence was insufficient to support a guilty verdict for both first degree robbery and armed criminal action[,]" challenges the sufficiency of the evidence and is another exception to the rule requiring specific findings by the trial court. *Id.*

Because appellate review of the denial of a post-conviction motion is limited to a determination of whether the findings and conclusions are clearly erroneous, as proscribed in Rule 29.15(k), without findings of fact and conclusions of law entered by the motion court on these issues, meaningful appellate review is not possible. *Oliver v. State*, 936 S.W.2d 242, 244 (Mo.App. 1996). We remand to the motion court for findings of fact and conclusions of law on Movant's claims in paragraphs 8(c), 8(d), 8(f), 8(g), 8(j), 8(k), and 8(*l*) of his amended post-conviction motion.

RAHMEYER, C.J., and PARRISH, J., concur.