STATE of Missouri,
Plaintiff-Respondent,

v.

Don McGINNIS, Defendant-Appellant.

No. 11926.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 25, 1981.

John L. Pursley, McNabb & Pursley, Butler, for defendant-appellant.

John Ashcroft, Atty. Gen., Rosalynn Van Heest, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

MAUS, Chief Judge.

In a two-count information the state charged that on October 31, 1979, the defendant committed burglary in the first degree in violation of § 569.160, RSMo 1979, and stealing in violation of § 570.030. A jury found the defendant guilty of each count. The defendant was sentenced to imprisonment for consecutive terms of seven years and three years. The defendant presents four points on appeal.

By one of those points he contends the evidence is not sufficient to sustain his conviction for burglary. This requires a summary of the evidence pertaining to that charge. However, in determining the sufficiency of the evidence, "the evidence and all reasonable inferences must be considered in the light most favorable to the state and all evidence and inferences to the contrary disregarded". *State v. Williams*, 600 S.W.2d 120, 121 (Mo.App.1980). A summary of the pertinent evidence so viewed follows.

The City of Butler maintained what was referred to as the "light plant" or public utilities building. It is impossible to state with specificity the design of that building, the location of various items of equipment within the building or the movement of the participants within the building. Both of the parties presented much of their evidence on these matters by questions or answers such as, "this door right here", referring without further identification to a diagram of the building before the court. In some instances information on such matters was given by a witness marking on the diagram. Although the diagram was introduced in evidence as an exhibit, neither party has filed that exhibit with this Court. See Crim. Rule 30.05. Nevertheless, while they must be stated in general terms, the facts necessary for the resolution of the points presented may be gleaned from the record.

The building was used for several purposes, including the generation, distribution and metering of electricity; a workroom and for the storage of tools; and for the "on the spot" sale and delivery of water to

members of the public. Water was sold and delivered at the southwest part of the building. The tools were stored some distance away in a separate area reached through an opening, although there was no door to that opening. There were eight exterior doors to the building. Double doors located at the southwest corner were used for the sale of water. There was an exterior door to the tool storage area. When the employee whose shift was from midnight to 8:00 a.m. came to work on the day in question, that door was closed and locked on the inside and the city's welding equipment was in the area.

While there were more employees at the building between 8:00 a.m. and 4:00 p.m., there was at least one employee on duty at the building at all times. At about 4:30 a.m. on the day in question, the sole employee on duty was seated in the office. From there he saw the defendant between two of the large electric generators. The defendant moved from the employee's view. The employee recognized the defendant and knew that at one time the defendant had been employed at the building. Without objection, the employee also stated that he knew the reputation of the defendant and the employee tried to be quiet in getting out of his chair and in investigating the presence of the defendant. After he left the office, the employee found the defendant yet inside, but near the rear of the building. To detain the defendant, the employee invited the defendant into the office where the two visited. At 5:00 a.m. they made the required electric meter check and the defendant left through the south office door. The employee then went to the tool storage area where he found the exterior door open and noticed the welding equipment was missing. The employee by radio notified the police patrol of the theft. The employee then saw the defendant driving from the utility yard with the welding equipment protruding from the trunk of his car. At that time the police patrol was approaching and the employee signaled to the patrol to apprehend the fleeing defendant.

After a chase the defendant's automobile slid into a ditch. The defendant then attempted to flee on foot but was overtaken and overpowered by the pursuing officer. During his flight on foot the defendant invited the officer to "shoot me, I would be better off dead than to spend ten more years in the pen". Later the defendant said he did it because he needed the money.

The defendant did testify. He denied none of the essential facts but attempted to justify his flight. He related that he and an associate had that day gone on a business trip to Kansas City. When they returned, the defendant's automobile was missing and the two searched for it. The defendant found it parked at the light plant. He said he fled because he knew no one would believe that he did not steal the welding equipment that was in the trunk of his car. He later added that the red lights of the approaching police patrol frightened him. The defendant did admit that he did not make such an explanation to the city employee at the light plant or to the arresting officer.

As stated, the defendant's principal contention is that the evidence does not support his conviction of burglary. This contention requires consideration of the new concept of the elements of burglary introduced by "The Criminal Code". The applicable portions of § 569.160 provide:

"1. A person commits the crime of burglary in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein, and . . . ; (3) There is present in the structure another person who is not a participant in the crime."

That definition is refined by § 569.010(8) which provides:

"(8) 'Enter unlawfully or remain unlawfully', a person 'enters unlawfully or remains unlawfully' in or upon premises when he is not licensed or privileged to do so. A person who, regardless of his purpose, enters or remains in or upon premises which are at the time open to the public does so with license and privilege

unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or by other authorized person.[1] A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public."

The defendant contends his conviction for burglary may not stand because the evidence shows he entered premises which were open to the public. To support that contention he emphasizes testimony that he could have entered the building through unlocked doors to the water sales area, there was no door to the tool storage area, and that members of the public on occasion entered the building to pump water in the early hours of the morning. He also cites testimony that on occasion an ex-employee would enter the tool storage area to use or borrow a tool and that occasionally a member of the public would enter that area to contact an employee on duty.

■ The precise basis upon which the defendant contends this evidence compels reversal is not clear. His point appears to be based upon three arguments, none of which are sound. First, the fact he could enter the building through unlocked doors and there was no door to the tool storage area is not determinative. Under the present statute neither a breaking or even the opening of a door is required. The statute is violated by an unlawful entry, an entry when the actor is not licensed or privileged to do so.[2]

■ Second, the fact one portion of the building was open to the public for the purchase of water does not require reversal. The statute clearly recognizes that only part of a building may be open to the public. "A license or privilege to enter or remain in a building which is only *partly open* to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public." § 569.010(8) (Emphasis Added). See *Sims v. State*, 613 S.W.2d 820 (Ark.1981); *People v. Davis*, 54 Ill.App.3d 517, 12 Ill.Dec. 362, 369 N.E.2d 1376 (1977).

■ The decisive question is whether or not the tool storage area was open to the public between 12 midnight and 4:30 a. m., the period during which that area was entered and the welding equipment taken. "The Criminal Code" does not define when a building is open to the public. It has been observed that the Oregon statutory definition of those terms provides a reliable guide to the interpretation of that phrase. *People v. Bozeman*, 624 P.2d 916 (Colo.App.1980). That definition is: "Open to the public means premises which by their physical nature, function, custom, usage, notice or lack thereof or other circumstances at the time would cause a reasonable person to believe no permission to enter or remain is required." Or.Rev.Stat. § 164.205. Any application of those terms must recognize that a building or a part of a building may be open to the public at one time and not open to the public at other times. Therefore, the

---

1. Statutes defining burglary in the terms of an unlawful or unauthorized entry may be construed to prohibit an otherwise authorized entry when the actor has a prohibited intent. "But authority to enter a business building or other building open to the public extends only to those who enter with a purpose consistent with the reason the building is open." *People v. Weaver*, 41 Ill.2d 434, 243 N.E.2d 245, 248 (1968). Also see *People v. Davis*, 54 Ill.App.3d 517, 12 Ill.Dec. 362, 369 N.E.2d 1376 (1977). However, it has also been held "[w]hether or not the defendant had permission to enter is a question that must be resolved without reference to his alleged intent . . . ." *State v Thibeault* 402 A.2d 445, 449 (Me. 1979). Query, which interpretation will apply under "The Criminal Code" in respect to premises not open to the public. See § 569.010(8).

2. "In view of the foregoing and of the fact that 'breaking' may be 'out' as well as 'in', the Committee decided to replace the concept of 'breaking' with that of 'entering or remaining unlawfully'. Section 569.010(8) defines this concept in terms of 'license or privilege'." Comment to § 569.170. See *People v. Davis*, supra, n. 1. In *Tribbett v. Com.*, 561 S.W.2d 662, 664 (Ky.1978), a defendant's conviction of burglary was affirmed when the licensor was murdered as "[u]pon the death of the licensor, the license ceased and the privilege to be upon the premises lapsed."

fact an ex-employee may on occasion enter the tool storage area to use or borrow a tool or on occasion a person may enter that area to contact an employee he knows is not decisive. The defendant's argument ignores the evidence that generally the tool storage area was closed to the public; that during the time in question only one employee was on duty; and that when an employee is on duty alone he would find out what anyone would be "doing back there, they are not suppose to be back there." There was evidence from which the jury could find the tool storage area was not open to the public at the time in question.

The defendant also contends his conviction must be reversed because the trial court did not grant him a continuance for the purpose of presenting Clayton Craig as a witness. After a change of venue, granted upon the defendant's application filed on the eve of the first trial setting, trial was commenced on April 1, 1980. However, that day a mistrial was declared and the case reset for July 23, 1980. It was not until July 16 that the defendant filed the application for the continuance that is in question. A subpoena for Craig was not issued until July 21, 1980.

The unverified application recited that Craig was not in the State of Missouri "and it is believed that his appearance cannot be obtained by due diligence in sufficient time for defendant's pending trial; however, the said witness could be compelled to appear at a future time; that said witness could testify as to the defendant's demeanor in statements made by the defendant immediately prior to the incidents alleged by the State; that the said witness would testify defendant entered the premises in question solely to determine why defendant's automobile was parked at the premises, and that the said witness is the only person who can verify defendant's testimony."

■ Whether or not an application for a continuance because of inability to present a witness should be sustained is within the sound discretion of the trial court. *State v. Murry*, 580 S.W.2d 555 (Mo. App.1979). In exercising that discretion,

the trial court is entitled to consider whether or not the application meets the requirements of the Rules of Criminal Procedure. *State v. Cuckovich*, 485 S.W.2d 16 (Mo. banc 1972). The application in question did not. It was not verified. Crim. Rule 24.09. It stated no facts to establish any diligence upon the part of the defendant to obtain the presence of Craig or otherwise present his testimony. Crim. Rule 24.10(a). It did not set forth Craig's residence nor any effort of the defendant to obtain his address. Crim. Rule 24.10(b). Nor did it state any grounds for belief the appearance or testimony of Craig could be obtained within a reasonable time. Crim. Rule 24.10(b). The application was deficient not only as to form but as to substance. The trial court did not abuse its discretion in denying an application that came so far from complying with the applicable rules. *State v. Powell*, 581 S.W.2d 442 (Mo.App.1979); *State v. Murry*, supra. The trial court certainly did not err in denying the defendant's oral renewal of that motion the morning of trial. *State v. Shryock*, 593 S.W.2d 906 (Mo.App. 1980).

■ The defendant seizes upon the last sentence of Criminal Rule 24.10 which reads: "If the court shall be of the opinion that the affidavit is insufficient it shall permit it to be amended." He then argues that the trial court should have advised the defendant of the nature of the deficiencies in his application and permitted him to amend to correct those deficiencies. This is a misconception of the meaning of the quoted rule. While this rule may imply that the court should consider an amendment tendered by the applicant, it does not require the court to instruct the applicant on how he may obtain a continuance.

The defendant's next point is that he must be granted a new trial because juror Knight did not reveal his arrest record during the voir dire examination. Actually, the transcript shows that upon the voir dire examination the defendant inquired if any of the jurors, disregarding traffic tickets and the like, had been charged with a crime. To this question there was no response.

The defendant for the first time in this court tenders information that Knight on August 1, 1979, entered a guilty plea to the charge of assault in the third degree upon which sentence was deferred and Knight was placed on probation. Those alleged facts may not be asserted for the first time in this court. *State v. McMillin*, 581 S.W.2d 612 (Mo.App.1979).

It is not every failure of a prospective juror to respond to a voir dire question that will entitle the defendant to a new trial. The defendant concedes that assault in the third degree is not a felony which disqualifies a person from serving as a juror. § 561.026. Whether or not a prospective juror's intentional failure to respond to a voir dire question will entitle a defendant to a new trial is within the discretion of the trial court. *State v. Scruggs*, 551 S.W.2d 306 (Mo.App.1977). For the trial court to exercise that discretion, the defendant in his after-trial motions must present the pertinent facts by way of affidavit. Crim. Rule 29.11. "[U]nverified allegations in a new trial motion do not prove themselves." *State v. Underwood*, 470 S.W.2d 485, 487 (Mo.1971). The defendant failed to do so but merely stated in his unverified motion for a new trial "that juror Lloyd Thomas Knight failed to disclose the fact that he had a criminal record". The trial court did not err in overruling such an unverified, vague and unspecific basis for a new trial. *State v. Dennison*, 571 S.W.2d 140 (Mo.App.1978).

The defendant's last contention is that the trial court erred in admitting testimony that when people entered the building to get water, they generally went no further than the office to get change for the coin operated meters. The defendant asserts this evidence was irrelevant. The basis for this assertion is not clear. It is apparently based upon the proposition that because one area of the building was open for the public to get water, the whole building was open to the public and therefore the evidence was immaterial. Evidence is relevant as it tends to prove or disprove a fact in issue and "[t]he question of relevan-cy is a matter to be determined by the trial court and if there is doubt concerning relevance the evidence should be admitted for evaluation by the trier of the facts". *State v. Lenza*, 582 S.W.2d 703, 709 (Mo.App. 1979). The defendant's contention is unsound. As heretofore discussed, the statute used in defining burglary expressly recognizes that a building may be only partially open to the public. § 569.010(8). The evidence in question was relevant in determining what part of the building was not open to the public. The trial court did not err in admitting that evidence. *State v. Heinz*, 607 S.W.2d 873 (Mo.App.1980). The judgment is affirmed.

PREWITT, P. J., and HOGAN and BILLINGS, JJ., concur.