**Vernon Lee TATUM, Petitioner,**

v.

**William ARMONTROUT, Respondent.**

No. 87–0538–CV–W–1.

United States District Court,
W.D. Missouri, W.D.

Sept. 16, 1987.

Vernon Lee Tatum, State Penitentiary, pro se.

William L. Webster, Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, Senior District Judge.

### I

This is a State prisoner habeas corpus case. On July 29, 1987 this Court entered orders which denied the prayer of respondent's response to the order to show cause that the petition be dismissed without further judicial proceedings and which directed the Attorney General to brief the merits of petitioner's federal claims for habeas corpus relief.[1] We have considered the brief on the merits filed by the Attorney General and the petitioner's traverse on the merits filed in reply to the Attorney General's brief. We have read and considered the complete transcript of the trial proceedings and briefs filed on direct appeal and the transcripts and briefs filed in regard to petitioner's Rule 27.26 motion.

We find and conclude that the petition should be denied for the reasons stated in this memorandum opinion, which will serve as our findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

### II

#### A.

We find and conclude that the following facts, which are quoted from the opinion of the Missouri Court of Appeals, Western District, on direct appeal, *see State v. Tatum*, 656 S.W.2d 305 (Mo.App.1983), were reliably found by that court:

> Defendant Tatum appeals a jury conviction of murder in the first degree, § 565.003, RSMo 1978. In accordance with the jury's verdict, the trial court sentenced Tatum to life imprisonment.

> We find no reversible error and we affirm the judgment.

The facts are as follows:

> On May 21, 1981, at approximately 7:00 a.m., an apartment manager discov-

---

1. Our memorandum opinion of July 29, 1987 pointed out that the petition in this case may have attempted to present a number of questions which might not constitute appropriate grounds for federal habeas corpus relief.

ered Marcile Cunningham dead in the victim's Kansas City, Missouri apartment with a bloody rag stuffed in her mouth. The victim was last seen alive the previous evening.

The police arrived soon thereafter and collected evidence. An autopsy revealed that the 72-year-old victim died from blunt force injuries to the head and asphyxiation caused by blood in her airway and the rag in her mouth. The victim's body was extensively bruised, and her nose and jaw were fractured. Prior to the victim's death, the attacker bound her wrists with the telephone cord. There were indications of a struggle.

On June 4, 1981, Kansas City, Kansas police arrested the defendant for unrelated offenses. Pursuant to the arrest, the Kansas City, Kansas officers took the defendant's clothing and several items from his person, including a knife. Thereafter, they summoned police and forensic examiners from Kansas City, Missouri to examine the belongings seized from the defendant. The examiners conducted tests on several of the items.

As a result of these tests, the Kansas City, Missouri police obtained a search warrant to seize the defendant's knife, shoes and a pair of rubber gloves. They subsequently arrested the defendant for the murder of Marcile Cunningham.

At trial, the state built its case on three items of scientific evidence. First, forensic experts determined that the knife recovered by Kansas City, Kansas police from the defendant was the same knife used to cut the telephone cord which bound the victim.

Second, the state's experts testified that the shoes worn by the defendant were "consistent" with footprints found in an alleyway outside the victim's apartment. The shoes were of the same size, style and sole design as those worn by

someone at the crime scene. However, the experts could not conclusively determine that the shoes taken from the defendant made the shoe prints found at the crime scene.

Third, investigators recovered three hairs from the victim's apartment. These hairs were compared to hair standards extracted from the defendant. The state's expert testified that the hairs from the crime scene were "indistinguishable" from the hair from defendant's head. He further testified that statistical studies have concluded that only one person in 5,400 would have the same hair. The expert would not testify, however, that the hairs recovered at the scene positively belonged to the defendant.

656 S.W.2d at 306-07.

### B.

Petitioner's petition alleges four grounds for habeas corpus relief: (1) denial of effective assistance of counsel, (2) denial of right to full and fair hearing on petitioner's Fourth Amendment claim as state courts refused to follow established federal constitutional law, (3) conviction obtained by introduction of inadmissible evidence, and (4) the evidence was insufficient to prove guilt beyond a reasonable doubt.

Petitioner's first alleged ground of denial of effective assistance of counsel was based on four "instances" which petitioner detailed in his petition. Petitioner's brief on the merits, however, accurately summarized each of the four "instances" by stating that in "the first instance, petitioner's trial and appellate counsel failed to fully insure that the circuit court or the court of appeals addressed the key issue of his Fourth Amendment claim or considered the applicable case law" [2] (petitioner's traverse at 2); that in "a second instance, this counsel allowed to be introduced into evidence, testimony and physical evidence concerning

---

**2.** Petitioner's Fourth Amendment claim was rejected on direct appeal. *See* 656 S.W.2d at 308–09. Petitioner's brief, however, stated that in "petitioner's 27.26 petition, he resubmitted his Fourth Amendment claim, to get the state courts to address the probable cause issue" and that

"counsel refused to challenge this in the appeal from the 27.26 petition's denial. In addition, he refused to submit all the facts necessary to substantiate the claims that were submitted." Petitioner's traverse at 4–5.

some rubber gloves found in the possession of petitioner at the time of his arrest in Kansas" (*id.* at 3); that in "a third instance, the trial counsel allowed to be introduced testimony concerning a probability study not accepted in its field as factual" (*id.*); and that in "a fourth instance, trial counsel conceded to the state that a knife found in petitioner's possession, was the same knife that was used to cut the phone cord at the crime scene when the crime occurred." *Id.* at 4.

Petitioner also contended that three of the four "instances" relied on to support his ineffective assistance claim should also be considered as independent grounds for federal habeas corpus relief. That contention is untenable for reasons that may be briefly stated.

### C.

Petitioner's first "instance" claimed ineffective assistance of counsel in regard to petitioner's Fourth Amendment claim. Petitioner alleged substantially the same claim as his second ground for federal habeas relief. Petitioner's argument that principles stated in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), should not be applied to his Fourth Amendment claim is untenable.

*Stone v. Powell* considered the specific question of "whether state prisoners—who have been afforded the opportunity for full and fair consideration of their reliance upon the exclusionary rule with respect to seized evidence by the state courts at trial and on direct review—may invoke their claim again on federal habeas corpus review." 428 U.S. at 489, 96 S.Ct. at 3050. That case answered that question in the negative by stating that "we conclude that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on

the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494, 96 S.Ct. at 3052.

■ The files and records in this case establish that the State courts reliably found that a motion to suppress was filed on January 20, 1982, that an appropriate evidentiary hearing was conducted on January 27, 1982, that the motion to suppress was denied by the State trial court on February 3, 1982, and that the Missouri Court of Appeals, Western District, rejected petitioner's Fourth Amendment argument on direct appeal.

■ We find and conclude that *Stone v. Powell* requires that petitioner's second ground for habeas corpus relief be rejected. We further find and conclude that petitioner was not denied the effective assistance of counsel in regard to his Fourth Amendment claim. The transcript of the evidentiary hearing on petitioner's motion to suppress and petitioner's appellant's brief on direct appeal establish that petitioner's counsel presented petitioner's lack of probable cause contention to both the State trial and appellate courts. Petitioner's counsel accurately summarized the action of the state trial and appellate court by stating that "I couldn't convince this Court [that there was not probable cause to arrest him] … and I couldn't convince the Court of Appeals." Exh. G at 76.

Although petitioner's Fourth Amendment claim is not subject to review on the merits in this federal habeas corpus proceeding, it is not inappropriate to note that the Missouri Court of Appeals, Western District, properly applied the principles stated in *United States v. Gargotto*, 476 F.2d 1009, 1014 (6th Cir.1973), *cert. denied*, 421 U.S. 987, 95 S.Ct. 1990, 44 L.Ed.2d 477 (1975), in affirming the trial court's denial of the motion to suppress. *See* 656 S.W.2d at 309.[3]

---

3. In *Gargotto* the Sixth Circuit, in reliance on the leading Eighth Circuit case of *Gullett v. United States*, 387 F.2d 307 (8th Cir.1967), *cert. denied*, 390 U.S. 1044, 88 S.Ct. 1645, 20 L.Ed.2d 307 (1968), concluded that "[e]vidence legally obtained by one police agency may be made

available to other such agencies without a warrant, even for a use different from that for which it was originally taken." 476 F.2d at 1014. *See also United States v. Montgomery*, 708 F.2d 343, 344 n. 3 (8th Cir.1983), in which the

#### D.

Petitioner's second and third "instances," later asserted as petitioner's third ground for habeas corpus relief, will be discussed together. Petitioner's second "instance" claimed ineffective assistance in regard to the admission in evidence of the rubber gloves found in his possession at the time of his arrest by the Kansas City, Kansas police department. Petitioner's third "instance" of ineffective assistance related to the admission in evidence of the hair expert's testimony concerning a probability study. Petitioner's third ground for habeas corpus relief alleged that his "conviction [was] obtained by [the] introduction of inadmissible evidence."

The "facts" stated in petitioner's petition in support of his third ground for habeas corpus relief identified the same rubber gloves that were identified in petitioner's second ineffective assistance "instance." That statement also identified the admission of the same "testimony from one of the state's witnesses on a probability study concerning hair fiber comparisons" that petitioner cited as a third "instance" of ineffective assistance of counsel. It is thus clear that the third ground for habeas corpus relief alleged in petitioner's petition does no more than present the substance of the same claims which petitioner attempted to present as petitioner's second and third "instances" of ineffective assistance of counsel.

▆▆▆ We find and conclude that petitioner's claims in regard to the admission of the rubber gloves in evidence and the admission of the State's expert testimony concerning the probability study do not present questions which are subject to review in this federal habeas corpus proceeding. For we cannot conclude under all the circumstances of this case that the admission of those two items in evidence may properly be considered so prejudicial as to constitute a denial of process. We further find and conclude that petitioner's counsel made every reasonable effort to keep the rubber gloves from being admitted in evidence and that his refusal to object to the expert's probability study testimony may not properly be said to constitute ineffective assistance of counsel under the circumstances of this case.

Analysis of the questions presented must, of course, take into account the Rule 27.26 trial judge's statement that a timely objection to what he called the "hearsay testimony" pertaining to the "probability study on hair comparisons [which] was not shown to be authoritative or reliable" would have been sustained. Exh. F at 30–31.[4] The Rule 27.26 trial court accurately stated that petitioner's "counsel did not object to this testimony nor did they request the court to instruct the jury to disregard it." *Id.* at 31. It concluded, however, that in order "to establish ineffective assistance of counsel the defendant must show not only that counsel failed to exercise that degree of skill and diligence required of reasonably competent counsel under similar circumstances, but also that as a result of counsel's dereliction he sustained actual prejudice." *Id.* The Rule 27.26 trial court added that even "if counsel did fail to object to what would otherwise be inadmissible testimony, this in and of itself would not necessarily prove ineffective assistance of counsel." *Id.*

Although the Rule 27.26 trial court did not cite *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), it in effect concluded that petitioner had failed to establish either of the "two components" required by that case. *Id.* at 687, 104 S.Ct. at 2064. It concluded that, on the facts, the petitioner failed to establish that his counsel's performance was deficient; it also concluded that the petitioner

---

Eighth Circuit followed the Sixth Circuit rule originally stated in *Gargotto.*

**4.** It is not at all clear that an objection based on "hearsay" would have been sustained in all jurisdictions. Under federal practice for example, the probability study to which the State's expert made reference might have been considered an exception to the hearsay rule under Rule 803 (18) of the Federal Rules of Evidence. *See also* Rule 703 of those rules which provides that under appropriate circumstances, the facts or data upon which an expert bases his opinion "need not be admissible in evidence."

had not been prejudiced by the failure of petitioner's counsel to object to the expert's testimony concerning the probability study.[5]

*Strickland* makes clear that the state court's conclusion that counsel rendered effective assistance is not "a finding of fact binding on the federal court to the extent stated by 28 U.S.C. § 2254(d)." 466 U.S. at 698, 104 S.Ct. at 2070. We are satisfied, however, by our independent examination of the trial and Rule 27.26 transcripts that although the Rule 27.26 trial court did not cite *Strickland*, it nevertheless properly applied the standard mandated by that case to the factual circumstances of this case.

■ Petitioner's counsel had two options in regard to the probability study. He could have either objected or he could have anticipated that he could demonstrate by cross-examination that the facts and data relied upon by the State's expert were not reliable. Counsel elected to follow the second option. We find and conclude that counsel's election to do so was reasonable considering all the circumstances of this case. Certainly, it must be said that the petitioner has failed to carry the burden of showing that such action was unreasonable.

### E.

■ Petitioner's third ground for habeas corpus relief is a basic claim that there was an apparent error in the admission of particular testimony in evidence. An error of such a nature may not properly be considered as a ground for habeas corpus relief absent factual circumstances that could be said to establish a denial of due process.

In *Wedemann v. Solem*, 826 F.2d 766 (8th Cir.1987), the Eighth Circuit applied the well-established rule that "an apparent error in admission of evidence under state law is not grounds to grant a federal writ of habeas corpus unless it rises to the level of a due process violation" at 768, citing *Hobbs v. Lockhart*, 791 F.2d 125, 127–28 (8th Cir.1986).[6] Application of that rule to the factual circumstances of this case requires that we find and conclude that the petitioner's claim in regard to the admission in evidence of the rubber gloves and the probability testimony presented only a question of state law and is not subject to review in this federal habeas corpus proceeding for the reason that the asserted error did not, in fact, result in a trial so unfair as to deny petitioner due process.

Petitioner's fourth "instance" presents a substantially more difficult question which requires a more detailed examination of the files and records of this case. We turn now to that question.

### III.

### A.

As noted above, petitioner summarized his "fourth instance" of ineffective assistance on page 4 of his brief on the merits by stating that "trial counsel conceded to the

---

5. The Rule 27.26 trial court stated that "[c]onsidering the witness' testimony in its totality including cross-examination, all of which clearly indicated to the jury that such statistics were not scientifically established and that the witness would not rely upon them or quote them flat out, this court is of the opinion and finds that defendant has not shown by the preponderance of the evidence that counsel's failure to object to testimony regarding the probability study was ineffective representation" (*id.* at 31–32) and that "the court further finds that defendant has failed to establish that he was actually prejudiced by such inaction of counsel." *Id.* at 32. That court further stated that "[i]n light of John Wilson's extensive testimony concerning his microscopic hair comparison analysis, which was properly admitted into evidence, this court regards the testimony of statistical

probability as cumulative and thus nonprejudicial on the facts of this case." *Id.* at 32–33.

6. *Hobbs*, in its turn, quoted and relied on *Wallace v. Lockhart*, 701 F.2d 719, 724 (8th Cir.), *cert. denied*, 464 U.S. 934, 104 S.Ct. 340, 78 L.Ed.2d 308 (1983) ("questions concerning the admissibility of evidence are matters of state law and are not reviewable in a federal habeas corpus proceeding unless the asserted error infringed a specific constitutional protection or was so prejudicial as to deny due process"). *See also Batten v. Scurr*, 649 F.2d 564, 569 (8th Cir.1981) ("[t]he wisdom of evidentiary rulings and trial procedure in state courts will not be reviewed unless they result in a trial so unfair as to deny due process"), and *Maggitt v. Wyrick*, 533 F.2d 383, 385 (8th Cir.), *cert. denied*, 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976).

state that a knife found in petitioner's possession, was the same knife that was used to cut the phone cord at the crime scene when the crime occurred." It is to be noted that petitioner's summary does not state when that concession was made by his counsel.

Petitioner's petition was no more definite in regard to when the concession was made by his counsel. For petitioner did no more than state generally in his petition that his "trial attorney relieved the state of its burden of proof on an important credibility issue, which was the key to its circumstantial case against petitioner, by conceding to the state the fact they had to prove." Petition at 3. The petition further stated that the "key to the state's case against petitioner was its contention that his knife was used to cut the phone cord at the time of this crime because of tests conducted by forensic examiners."[7] *Id.* Consideration of petitioner's claim as pleaded in his petition is unduly complicated by the Attorney General's discussion of a claim that petitioner did not allege in his petition. On page 15 of his brief on the merits, the Attorney General stated that he would discuss petitioner's *"allegation* of ineffective assistance of counsel ... that his attorney conceded facts *during closing argument."* (Emphasis added). The Attorney General does not attempt to suggest where the petitioner may have made such an "allegation."

---

7. The substance of petitioner's claim in regard to any concession that defense counsel may have made in regard to the knife was not specifically alleged as a ground for relief in petitioner's Rule 27.26 motion. Indeed, the Rule 27.26 trial judge accurately stated that petitioner had not specifically alleged in his motion the claim "that counsel was ineffective in conceding that the knife taken from defendant upon his arrest was the same knife that was used to cut the telephone cord found in the victim's home." Exh. F at 26. Nor was the question of concession presented as a point relied upon on direct appeal.

8. We, of course, reject the Attorney General's argument based on *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), that the conclusions stated by the Rule 27.26 trial and appellate courts in regard to this aspect of petitioner's ineffective assistance claim are "entitled to the presumption of correctness estab-

◼ The difficulty occasioned by the Attorney General's narrow statement of petitioner's claim was substantially reduced by his concession that review of petitioner's claim of his counsel's alleged improper concession in regard to the knife "is appropriate since petitioner presented the claim to the Rule 27.26 trial court and appellate court." *Id.* We find and conclude that the concession made by the Attorney General on page 15 of his brief is broad enough to permit, without further discussion, this Court's review of the merits of petitioner's claim in regard to defense counsel's knife concession as that claim was actually pleaded in petitioner's petition.[8]

### B.

There can be no question that the Rule 27.26 trial court discussed defense counsel's closing argument in some detail. That court stated that: "The court has examined a transcript of the closing arguments and it reveals that counsel made an argument on the assumption that the knife cut the cord contending that there was no evidence that defendant had this knife at the time of the murder." Exh. F at 28.[9] The statements of the Rule 27.26 trial and appellate courts, however, could not properly be accorded a Section 2254(d) presumption of correctness for the reason that the transcript of defense counsel's argument has never been presented to this Court.[10]

---

lished in 28 U.S.C. § 2254(d)." *Id.* at 10. For *Strickland v. Washington,* 466 U.S. at 698, 104 S.Ct. at 2070, expressly holds that "in a federal habeas challenge to a state criminal judgment, a state court conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. § 2254(d)."

9. The Missouri Court of Appeals, Western District, also stated that the "trial court found after examination of a transcript of the closing arguments that counsel made the argument only on the assumption of the identity of the knife, and that the argument was an appropriate trial tactic." Exh. J at 4.

10. Petitioner's motion that a transcript of defense counsel's closing argument be made a part of the Rule 27.26 record (Exh. F at 18) was not ruled by the Rule 27.26 trial court. The Missouri Court of Appeals, Western District, reject-

Thus this Court has no factual data before it upon which it would be able to conclude that the Rule 27.26 trial court reliably found that defense counsel did not, in fact, concede that the knife found in the possession of the petitioner fifteen days before the murder was the knife that cut the telephone cord.

The complications occasioned by the narrow manner in which the Attorney General elected to brief the merits of what concession defense counsel may have made in regard to the knife are further reduced by the broad concession that the counsel for the State expressly made during the course of the Rule 27.26 proceeding. The prosecuting attorney expressly advised the Rule 27.26 trial court that defense counsel had, in fact, conceded that the knife was the same knife.[11]

### C.

The fact that this Court may not properly conclude that the Rule 27.26 trial and appellate courts reliably found that defense counsel did not make any concession in regard to the knife *in his closing argument* does not mean that the petitioner is entitled to habeas corpus relief. It merely means that the determination of whether petitioner was denied effective assistance of counsel must be made in light of the Prosecuting Attorney's statement to the Rule 27.26 trial court that "the State doesn't have any quarrel with the fact that Mr. McMullin conceded that the knife was the same knife." Exh. G at 39. For reasons stated in the next part of the memo-

 randum opinion, we find and conclude that the petitioner was rendered reasonably effective assistance of counsel in regard to the knife concession in full accordance with the controlling Sixth Amendment standard.

### IV

### A.

The Rule 27.26 trial court did not cite any legal authority, either state or federal, in its decision denying petitioner's Sixth Amendment claim in regard to the knife concession. Nor did it articulate any constitutional standard that it believed to be applicable to defense counsel's action in making that concession. Rather, it stated as a conclusion of law that "[b]y conceding or assuming that defendant's knife was used to cut the telephone cord found in the victim's apartment, defendant's trial counsel were exercising their best judgment on a trial tactic." [12] Exh. F at 38.

While the Missouri Court of Appeals, Western District, recognized the existence of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and the leading Missouri case of *Seales v. State,* 580 S.W.2d 733 (Mo.1979) (en banc) (Exh. J at 3), it nevertheless affirmed the Rule 27.26 trial court's conclusion of law under a state "trial strategy" rule rather than by application of the controlling federal standard articulated in *Strickland* and in *Seales.* For the Rule 27.26 appellate court concluded, in reliance upon *Williamson v. State,* 628 S.W.2d 895, 898 (Mo.App.

ed point one of petitioner's Rule 27.26 appellate brief which contended that the Rule 27.26 trial court had erred in refusing to do so. *See* Exh. H at 6.

**11.** The Assistant Prosecuting Attorney made the following statement to the Rule 27.26 trial court: "MR. DOLLAR: Judge, just for the record, the State doesn't have any quarrel with the fact that Mr. McMullin conceded that the knife was the same knife." Exh. G. at 39. Mr. Dollar was undoubtedly familiar with the fact that defense counsel had argued in petitioner's appellant's brief on direct appeal that the "knife found on the defendant fifteen days after the crime was *unquestionably* used to cut the cord at the scene of the crime." (Emphasis added). Exh. C at 18.

**12.** The Rule 27.26 trial court also stated as a conclusion of law that "[d]efendant has failed to show how such trial tactic was actually prejudicial to him and denied him a fair trial." *Id.* at 38. We believe it obvious that if it were determined that defense counsel's action in regard to the knife did not constitute reasonably effective assistance under the circumstances of this case, petitioner would have suffered substantial prejudice. For the evidence that the knife found in petitioner's possession was the knife that cut the telephone cord was obviously the most important item of evidence adduced against the defendant at trial.

1981), and in accordance with an argument presented to it by the Attorney General, that "[a]llegations of ineffectiveness which relate to trial strategy are not cognizable in a Rule 27.26 proceeding." [13] Exh. J. at 4.

That conclusion of law, although not placed in quotation marks, was taken directly from *Williamson*. *Williamson*, in its turn, based its articulation and application of the state "trial strategy" rule on *Cage v. State*, 573 S.W.2d 73 (Mo.App. 1978), and *Cole v. State*, 573 S.W.2d 397 (Mo.App.1978). *Williamson*, *Cage*, and *Cole* were all decided before *Strickland* was decided by the Supreme Court of the United States. *Cage* and *Cole* were decided before *Seales* was decided by the Supreme Court of Missouri. The three cases upon which the Rule 27.26 appellate court relied articulated and applied a state "trial strategy" rule which did not discuss or purport to apply a federal constitutional standard to the factual circumstances presented in those cases. It is therefore impossible for this Court to conclude that the state courts properly applied the controlling federal constitutional standard to the factual circumstances of this case.

### B.

This Court recently stated in *Kern v. Armontrout, supra,* for reasons set forth in detail, that "we cannot properly defer to the State trial and appellate courts' articulation and use of the 'trial strategy' rule in this case" for the reason that the "Court of Appeals for the Eighth Circuit has recognized that a determinative application of a State court 'trial strategy' rule that avoids appropriate Sixth Amendment factual analysis is not a constitutionally permissible rule." 662 F.Supp. at 830.

In part III of *Kern* we discussed the recent Eighth Circuit cases of *Eldridge v. Atkins*, 665 F.2d 228 (8th Cir.1981), *cert. denied*, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982), and *Kellogg v. Scurr*, 741 F.2d 1099 (8th Cir.1984), and concluded that the "Eighth Circuit's rejection of Missouri's 'trial strategy' rule in *Eldridge* and Iowa's 'trial tactic' rule in *Kellogg* is consistent with the rationale and standard articulated in *Strickland v. Washington, supra.*" 662 F.Supp. at 831. And in part III C of *Kern* we discussed *Strickland*'s adoption of the "reasonably effective assistance" constitutional standard that had theretofore been adopted by all the federal courts of appeals.

This Court concluded its discussion of the *Strickland* standard in *Kern* with the statement that "[b]ecause the courts of Missouri applied a 'trial strategy' rule rather than the applicable federal ineffective assistance standard, this Court is required to make an analysis of the record in accordance with the principles stated in *Strickland* and in the Eighth Circuit cases above cited." *Id.* at 832. The same situation is presented in this case in regard to petitioner's claim concerning the knife concession. We are therefore required to review the factual circumstances established by the record made at the Rule 27.26 hearing.

### C.

■ Mr. McMullin, petitioner's lead counsel at trial, recognized by the time the case was set for trial that the knife would be "the most devastating piece of evidence" in the case against the petitioner. Exh. G at 86. He also recognized that the "only defense as to the knife" would be to contend that the State would not be able to "show beyond a reasonable doubt that he

---

**13.** The respondent's brief filed by the Attorney General in the Rule 27.26 appeal cited both *Strickland* and *Seales*. It did not, however, argue that the standard articulated in those cases should be applied to the factual circumstances of this case. Rather, the Attorney General's brief argued that "appellant's claim that his trial counsel conceded that the knife found on appellant was used to cut a cord in the victim's apartment is a matter of trial strategy. Allegations of ineffective assistance of counsel which

relate to trial strategy are not cognizable under a Rule 27.26 motion. *Williamson v. State, supra* at 898–899; *Porter v. State*, 682 S.W.2d 16, 18–19 (Mo.App., W.D.1984)." Exh. I at 9. As noted in the text, the Missouri Court of Appeals, Western District, accepted that argument.

*Williamson* will be discussed in the text. *Porter* was fully discussed in footnote 4 of *Kern v. Armontrout*, 662 F.Supp. 825, 829 n. 4 (W.D. Mo.1987), to which we will later make reference in the text.

had the knife fifteen days earlier when the woman was murdered in her apartment." *Id.* Mr. McMullin testified that the "theory of the defense was that simply because he had the knife fifteen days after the killing, didn't mean that he had the knife at the time of the killing. He could have received it innocently." *Id.* at 79. It is thus clear that Mr. McMullin recognized from the outset that if the knife were admitted in evidence, it would be the most important item of circumstantial evidence against his client.

The indictment was returned August 7, 1981. Exh. B at 2. On September 15, 1981 Mr. McMullin filed (1) a motion that the defendant be allowed to employ experts, and (2) a motion allowing the defendant to take depositions of the State's experts.[14] Both motions were granted. Mr. McMullin took the deposition of John Charles Clayton, the State's expert witness on January 8, 1982. Exh. G at 57. Mr. Clayton testified at that deposition as follows:

> "QUESTION: All right. Now my question is, can you state positively and unequivocally that the knife found at the defendant's or on the defendant's property or in his property was the one that made the cut on the cord at the scene?"
> "ANSWER: It's my opinion that it's the same knife that made that mark on the cord."

*Id.* at 57.

Faced with the knowledge of how the State's expert would testify at trial, Mr. McMullin, acting pursuant to the order he had obtained from the trial court, had the knife and the telephone cord examined by an expert on behalf of the petitioner. Mr. McMullin concluded after getting a report

from that expert that the expert he had employed on petitioner's behalf could not be called as a defense witness. Mr. McMullin explained that "[w]e didn't put our knife expert on because he agreed [with] their expert, and it would have hurt us, in my opinion, to have our own expert saying the knife was used to cut the cord." *Id.* at 51.[15]

Before the trial commenced, Mr. McMullin explained to the petitioner the difficulties that the defense would face should the petitioner's expert be called as a witness. *Id.* at 58. Petitioner confirmed the fact that Mr. McMullin "told me before we even went to trial, that they was going to concede to the State that the knife was used on the phone cord, because the State's expert, Cayton [sic], was testifying [to] that in his opinion." *Id.* at 24. Petitioner stated that while "I wasn't quite satisfied with that decision to concede that the knife was used to cut the phone cord," he nevertheless "went along with him on that." *Id.*

On January 20, 1982, after interviewing the Kansas City, Kansas police officers and after taking the depositions of the Kansas City, Missouri police officers who obtained the knife and other items of evidence from the Kansas City, Kansas Police Department, Mr. McMullin filed a motion to suppress all the physical evidence in the case, including but not limited to the knife. Exh. B at 12. The trial court held an appropriate evidentiary hearing of that motion on January 27, 1982. *See* Exhibit A at 1 to 85, inclusive. As Mr. McMullin explained, "[w]e tried to keep the knife, the hair, the shoes, everything out in our Motion to Sup-

---

**14.** Both motions contained a paragraph which alleged that "the case against the Defendant is entirely circumstantial, and the State's case will be based upon State experts, who will testify that hair, shoe prints at the scene, a knife, gloves and a piece of cut telephone cord, were all used by or belonged to the Defendant." Exh. B at 8. That allegation establishes that defense counsel was familiar with the data in the prosecution's file within five weeks after the indictment was filed.

**15.** When asked a second time about why he did not put the petitioner's expert on the stand, Mr.

McMullin testified that "I did not use our knife expert and I would not do it again, because I think it would bury us that much more." *Id.* at 64. When asked a third time, he again explained with a bit of understandable impatience, that the testimony of the petitioner's expert would have "confirmed exactly" the opinion of the State's expert that "the knife found on the defendant [was] used to cut the telephone cord," adding "[w]hy on God's green earth would I want to put on my own expert to confirm what the State's already trying to prove?" *Id.* at 81–82.

press." Exh. G at 80. He further explained that:

> I moved to quash the seizure of everything taken whether by search warrant or not. I just wanted to quash it all because I felt that even when they went over and checked the knife before they had a search warrant, I believe that was wrong, and I believe that subsequent search warrants would be wrong, and therefore everything should be suppressed, but unfortunately for the defendant, the Circuit Court and the Court of Appeals didn't agree with us.[16]

*Id.* at 69–70

The transcript of the trial establishes that Mr. McMullin's cross-examination of the State's expert witness was conducted in a most effective manner. *See* Exhibit A at 362–396. Toward the close of that cross-examination that expert testified as follows:

> Q  All right, sir. Oh, let's see. In conclusion, you didn't work on the hair, you eliminated the gloves, since the gloves found were not the ones that made the prints at the scene of the crime, you eliminated the gloves; the shoes, you cannot say as a scientific fact that the defendant's shoes made the prints at the scene of the crime; and you can say that the knife, in your opinion, professional opinion, the knife found on the defendant 15 days later, was the knife that cut the telephone cord in the lady's house, is that a fair statement?
>
> A  Yes.

Exh. A at 392.[17]

We find and conclude that under the factual circumstances of this case the petitioner failed to make the required showing that the services rendered by his trial counsel in regard to the knife were in fact

deficient and that those services complied with the objective standard of reasonableness established by *Strickland.*

We further find and conclude that the record in this case establishes that the services rendered petitioner by his trial counsel in regard to the knife were, in fact, reasonable under the particular circumstances of this case. Indeed, in light of the report received from the expert employed by the defense to examine the knife and telephone cord, we do not know how any competent defense counsel could have proceeded in regard to the knife in any way other than the manner in which Mr. McMullin proceeded in this case.

### V

#### A.

The fourth and final ground alleged in petitioner's petition for habeas corpus was that the evidence was insufficient to prove guilt beyond reasonable doubt. Petition at 4–5. Petitioner's brief on the merits accurately states that the "evidence presented against petitioner at trial was that: (1). petitioner was wearing, some fifteen days after the crime occurred, some shoes which had the same sole design pattern, and were of a similar size as one of two different sets of shoeprints, found at the crime scene; (2). that hair fibers found at the scene were of the same class characteristics as his head hair standards; (3). that forensic experts, had determined that a pocketknife found in his possession was the same knife that made a nick in a piece of phone cord recovered from the crime scene." Petitioner's traverse at 13.

The petitioner's brief on the merits, with primary reliance on *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), argues

---

**16.** Mr. McMullin properly presented and argued the question of the validity of the seizure on direct appeal. The Missouri Court of Appeals, Western District, simply ruled the point against the petitioner. *See State v. Tatum,* 656 S.W.2d at 308–09.

**17.** The State's expert further testified on cross-examination as follows:

> Q  In other words, to phrase it another way, do you have any evidence that 15 days earlier the defendant owned the knife or even had access to the knife 15 days earlier?
>
> A  No.

*Id.* at 394.

that no rational trier of the facts could have found proof of guilt beyond a reasonable doubt.

B.

*Jackson v. Virginia* decided that the "no evidence" rule stated in *Thompson v. Louisville,* 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960), was "simply inadequate to protect against misapplications of the constitutional standard of reasonable doubt" that the Court had recognized for the first time in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).[18] 443 U.S. at 320, 99 S.Ct. at 2789.

Justice Stevens' opinion concurring in the judgment of *Jackson v. Virginia,* pointed out, we believe accurately, that the Court's rejection of the old "no evidence" rule of *Thompson v. Louisville* "creates a new rule of law," and that the majority opinion in *Jackson v. Virginia* had decided that "the Constitution now prohibits the criminal conviction of any person ... except upon proof sufficient to convince a *federal judge* that a 'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' *Ante,* at 319 [99 S.Ct. at 2789]." (Justice Stevens' emphasis). *Id.* at 326–27 [99 S.Ct. at 2793].[19]

As forecast in Justice Stevens' opinion concurring in the judgment of *Jackson v. Virginia,* this Court has been required to read the entire transcript of the trial and to consider the law of Missouri under which the petitioner was convicted. For the Missouri Court of Appeals, Western District, did not indicate what standard it may have applied in concluding that there "was sufficient evidence to support the defendant's conviction" and that from the "combination of circumstances, the jury reasonably could infer the defendant's guilt." [20] 656 S.W.2d at 309.

We have considered the evidence in this case in accordance with *Jackson v. Virginia's* admonition that "a federal habeas corpus court ... must presume ... that the trier of fact resolved any ... conflicts in favor of the prosecution" (443 U.S. at 326, 99 S.Ct. at 2793). We have also considered the Missouri statutes under which the defendant was convicted. We find and conclude, for the reasons to be stated, that a rational jury could have reasonably found from the evidence adduced at petitioner's trial that the petitioner was guilty of the offense with which he was charged.

C.

The Missouri Court of Appeals, Western District, reliably found that the petitioner was convicted "of murder in the first degree, § 565.003, RSMo 1978." [21] 656

18. Certiorari was granted in *Jackson v. Virginia* "to consider the petitioner's claim that under *In re Winship, supra,* a federal habeas corpus court must consider not whether there was *any* evidence to support a state-court conviction, but whether there was sufficient evidence to justify a rational trier of the facts to find guilt beyond a reasonable doubt." 443 U.S. at 312–13, 99 S.Ct. at 2785. The Court stated that the grant of certiorari presented the question of "what standard is to be applied in a federal habeas corpus proceeding when the claim is made that a person has been convicted in a state court upon insufficient evidence." *Id.* at 309, 99 S.Ct. at 2783.

19. Justice Stevens added that "because the 'rational trier of fact' must certainly base its decisions on *all* of the evidence, the Court's broader standard may well require that the entire transcript of the state trial be read whenever the factfinders' rationality is challenged under the Court's rule." (Justice Stevens' emphasis). *Id.* at 337, 99 S.Ct. at 2798.

20. The Attorney General's argument that conclusory language in the decision of the Missouri Court of Appeals, Western District, "is entitled to great weight" is untenable under the circumstances of this case. For the Eighth Circuit in *Lenza v. Wyrick,* 665 F.2d 804, 812 (8th Cir. 1981), in express reliance on footnote 15 in *Jackson v. Virginia,* 443 U.S. at 322 n. 15, 99 S.Ct. at 2790–91 n. 15, properly concluded that the "decision of the state court is not conclusive, but is entitled to great weight *if the state court invokes the proper standard.*" (Emphasis added). The state court simply did not invoke any standard in this case and thus its conclusion cannot properly be accorded any substantial weight.

21. Section 565.003 was in effect at the time petitioner was charged. That statute has since been repealed by L.1983, p. 922, S.B. No. 276, § 1. *See* Mo.Ann.Stat. § 565.003 (Vernon Supp. 1987).

S.W.2d at 306. The information in lieu of indictment filed April 22, 1982, alleged that "the defendant, Vernon Tatum, in violation of Section 565.003. RSMo, committed the class A felony of murder in the first degree ... in that defendant, Vernon Tatum, unlawfully killed Marcile Cunningham by ... causing her to die on May 21, and such killing was committed in the perpetration of the felony of burglary ... in violation of Section 569.170, RSMo, when defendant, Vernon Tatum, knowingly entered unlawfully in an inhabitable structure, located at 107 E. 40th Street, Apartment 112, Kansas City, Missouri, for the purpose of committing stealing therein." Exh. B at 19.

Section 565.003 provided the following at the time petitioner was charged and convicted:

### First degree murder defined

Any person who unlawfully kills another human being without a premeditated intent to cause the death of a particular individual is guilty of the offense of first degree murder if the killing was committed in the perpetration of or in the attempt to perpetrate arson, rape, robbery, burglary, or kidnapping.

Section 569.170, to which reference was made in the information, provided the following at the time the petitioner was charged and convicted:

### Burglary in the second degree

1. A person commits the crime of burglary in the second degree when he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein.

2. Burglary in the second degree is a class C felony.

Under the information filed in this case the prosecution was required to adduce sufficient evidence to prove two essential elements beyond reasonable doubt in order to obtain a conviction under Section 565.003: (1) that the defendant caused the death of Marcile Cunningham on or about May 21, 1981 by striking her and (2) that the defendant did so in the perpetration of a burglary in violation of Section 569.170 in

that the defendant unlawfully entered the victim's apartment for the purpose of committing stealing. *Cf.* Section 15.06 MAI–CR 2d (1978).

In order to establish a violation of Section 569.170 as alleged in the information, the prosecution was required to adduce sufficient evidence to prove beyond a reasonable doubt the two essential elements of that offense: (1) that the defendant knowingly and unlawfully entered the victim's apartment and (2) that he did so in the perpetration of the felony of burglary. *Cf.* Section 23.52, MAI–CR 2d (1979).

Petitioner argues on page 15 of his brief on the merits that there was no evidence sufficient to support a finding that a "burglary occurred" or that "something of value was taken." Petitioner cited various pages of the trial transcript which reflect the testimony given by Charles Scudder of the Crime Investigation Unit of the Kansas City Police Department on cross-examination that police officers who examined the apartment shortly after the murder found no evidence of a forced entry through the double windows of the apartment (Tr. 114); that they found no pry marks, no fingerprints on any of the windows or the front door (Tr. 115); that the windows of the apartment were unlocked (Tr. 119); that all except one of the outside screens were closed (Tr. 120); that the fact that the footprints were found below the partially open screen was not "proof positive that the killer or killers entered that way" (Tr. 139); and that it was true that "the lady who lived there could have raised it and left it up part way" (Tr. 139); and that neither fingerprints nor glove prints were found on the inside or outside of any of the windows. Tr. 140. Petitioner also cited the police officer's testimony on cross-examination that confirmed that the police investigation did not find any evidence that anything had been taken from the apartment. Tr. 132, 133, 134.

On direct examination Officer Scudder identified numerous photographs that he took of the scene of the crime and testified about his personal observation of the condition of the apartment. The photographs

corroborated his testimony that he observed the telephone with the phone cord cut (Tr. 57); that purses and items were scattered about the floor of the living room (Tr. 57); that he collected a number of miscellaneous paper items from the living room floor that "looked like they had been rifled through" (Tr. 77–78); that other miscellaneous paper items were collected from the chest in the dressing room area that "looked like they possibly had been handled and moved around on the chest" (Tr. 78); that "from our investigation, the point of entry was apparently" through the dressing room window, the outside screen of which was raised and under which the shoe impressions were found (Tr. 88); and that he also found a number of photographs that were "scattered about the bathroom floor." Tr. 97.

None of Officer Scudder's testimony on direct examination was impeached on cross-examination. Indeed, he reiterated on cross-examination that the shoe prints were found under the dressing room window (Tr. 115–16) and that he assumed that window was the point of entry from that fact and from the additional fact that there was a "spot of blood" on that window (Tr. 116). He also reiterated his direct examination testimony that the screen on that window was partially open. Tr. 118. He further testified that the apartment looked as though it had been ransacked (Tr. 121) and that it was a "fair statement" to say that the "place was ransacked, . . . as if someone was looking for something." Tr. 133. He agreed, of course, that from his investigation the apartment looked "just like someone [had been] looking for something, but there is no evidence . . . anything . . . was taken from that apartment." Tr. 133–34.

Petitioner's argument that there was insufficient evidence to support a finding of burglary in the second degree in violation of Section 569.170 as alleged in the information is untenable for the reasons we now state.

## D.

The crime of burglary at common law and burglary in the second degree as defined in Section 569.170 are substantially different crimes. 13 Am.Jur.2d, Burglary, § 1, accurately states that: "Burglary, at common law, is the breaking and entering, in the nighttime, of the dwelling or mansion house of another, with intent to commit a felony therein." That work added, however, that "practically every jurisdiction has statutorily defined the crime and in many cases the offense has been materially broadened."

When the Missouri General Assembly enacted Section 569.170, it broadened the definition of burglary by totally eliminating the necessity of proving the common law element of "breaking and entering." The Comment on Section 569.170 as proposed (*see* Mo.Ann.Stat. § 569.170 (Vernon 1979)) accurately stated that before Section 569.170 was enacted, various types of burglary were defined in Sections 560.040 through 560.110 of the earlier statutes of Missouri.[22] That Comment appropriately stated that: "Each section of the [earlier] law defining some degree of burglary is dependent upon some act of 'breaking and entering' or at least 'breaking.'" The Comment added that what "constitutes a 'breaking' has undergone considerable change over the years" and cited various Missouri cases that had concluded that merely "opening a closed window or door can be a sufficient 'breaking.'"

The Committee that proposed the enactment of Section 569.170 then stated that in view of the manner in which the element of "breaking" had been construed by the Supreme Court of Missouri and in view of the fact "that 'breaking' may be 'out' as well as 'in', the Committee decided to replace the concept of 'breaking' with that of 'entering or remaining unlawfully,'" The Comment pointed out that the elimination of the element of "breaking" and the replacement of that element with the new element "entering or remaining unlawfully" were consistent with the definition of

---

**22.** Those fifteen separate statutes, former Section 560.040 through 560.110, are published in

the Appendix to 41A Mo.Ann.Stat. (Vernon 1979) pages 462–465.

the new element as defined in Section 569.-010(8).[23]

The impact of the elimination of the element of "breaking" from both burglary in the first degree, as defined in Section 569.-160, and from burglary in the second degree, as defined in Section 569.170, was appropriately recognized in *State v. McGinnis*, 622 S.W.2d 416 (Mo.App.1981).[24] The defendant in *McGinnis* contended that the evidence adduced at trial was not sufficient to sustain his conviction for burglary. The defendant argued that the state had failed to prove a "burglary" in that the evidence established that he could have entered the building through unlocked doors and that there was no door at all to the tool storage area from which certain tools had been taken. The Missouri Court of Appeals, Southern District, properly stated that the defendant's insufficiency of the evidence argument "requires consideration of the new concept of the elements of burglary introduced by 'The Criminal Code' ". 622 S.W.2d at 418. The *McGinnis* court then quoted Section 569.160 and Section 569.010(8) and concluded that "the fact he could enter the building through unlocked doors and there was no door to the tool storage area is not determinative." *Id.* at 419. In reliance on the Comment to Section 569.170 to which we have referred, the *McGinnis* court held that:

> Under the present statute neither a breaking or even the opening of a door is required. The statute is violated by an unlawful entry, an entry when the actor is not licensed or privileged to do so.[25]

*Id.*

▮ Application of the controlling constitutional standard articulated in *Jackson v. Virginia* requires that we determine whether sufficient evidence was adduced

from which a rational jury could reasonably have found that the petitioner committed murder in the first degree as defined in Section 565.003 in that the killing of Marcile Cunningham was committed in the perpetration of the felony of burglary as defined in Section 569.170. We find that the circumstantial evidence adduced in regard to the defendant's possession of the knife that cut the telephone cord, the similarity of the hair strands, the footprints found underneath the window with the partially opened screen, and the ransacked appearance of the apartment was, in our judgment, sufficient to support the petitioner's conviction. We therefore conclude that a rational jury could reasonably infer from all those circumstances that the defendant did, in fact, unlawfully enter the apartment within the meaning of Section 569.170 for the purpose of committing a crime and that he was the person who killed Marcile Cunningham in perpetration of the crime of burglary in violation of Section 565.003.

*Jackson v. Virginia* directed attention to the fact that the notion entertained in some state jurisdictions that "the prosecution was under an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt" was expressly rejected in *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137–38, 99 L.Ed. 150 (1954). *See* 443 U.S. at 326, 99 S.Ct. at 2792–93. The rule of *Holland* was thus incorporated in the insufficiency of the evidence constitutional standard stated in *Jackson v. Virginia*, 443 U.S. at 326, 99 S.Ct. at 2793.

We therefore find and conclude that petitioner has not carried the burden of establishing any ground for relief as alleged in his petition for habeas corpus.

---

**23.** Section 569.010(8) defines to "enter unlawfully or remain unlawfully," as used throughout chapter 569 of the Missouri Statutes, to mean "a person 'enters unlawfully or remains unlawfully' in or upon premises when he is not licensed or privileged to do so."

**24.** Both Section 569.160 and Section 169.170 contain the identical language that a person commits the crime of burglary if "he knowingly enters unlawfully or knowingly remains unlaw-

fully in a building or inhabitable structure for the purpose of committing a crime therein." The fact *McGinnis* involved Section 569.160 rather than Section 569.170 is therefore irrelevant.

**25.** *See also State v. McAlester*, 635 S.W.2d 76, 77 (Mo.App.1982) ("While the former law did require a bursting or breaking, § 569.160 makes no such requirement.")

VI

For the reasons stated, it is

ORDERED (1) that petitioner's petition for a writ of habeas corpus should be and the same is hereby denied. It is further

ORDERED (2) that the Clerk, pursuant to Rule 58 of the Federal Rules of Civil Procedure, shall enter judgment on a separate document in favor of the respondent and against the petitioner.